75 P.3d 743

**Philip D. LAMPRECHT,**
**Plaintiff–Appellant,**

v.

**JORDAN, LLC, a limited liability**
**company, Defendant–**
**Respondent.**

No. 28648.

Supreme Court of Idaho,
Boise, May 2003 Term.

Aug. 13, 2003.

Thomsen & Stephens, Idaho Falls, for appellant. James D. Holman argued.

Cooper & Larsen, Pocatello, for respondent. Gary L. Cooper argued.

KIDWELL, Justice.

Philip Lamprecht (Lamprecht) sued Jordan, L.L.C. (Jordan) after his membership in Jordan was terminated. Lamprecht sought: (1) a declaratory judgment stating that Jordan must pay him fair market value for his

membership in Jordan rather than just the amount in his capital account; and (2) damages in the amount that Jordan was unjustly enriched by paying him the balance of his capital account in Jordan rather than fair market value for his interest when he was terminated. Jordan filed a motion for summary judgment, which the district court granted. Lamprecht appeals the district court's decision to grant summary judgment. The judgment of the district court is affirmed.

## I.

## FACTS AND PROCEDURAL BACKGROUND

Lamprecht, an accountant, was one of the founding members of the accounting firm Jordan & Company, Chtd. (the Firm). The Firm operated in the Spaulding Building in Pocatello. Sometime in late 1997 or early 1998, the Firm, along with other Spaulding Building occupants, was presented with an opportunity to acquire the Spaulding Building. All of the partners of the Firm formed Jordan, a separate limited liability company, for the purpose of acquiring and maintaining real estate, specifically the Spaulding Building. On January 1, 1998, all the members of the Firm signed Jordan's Operating Agreement (Operating Agreement). Jordan then became a member of Spaulding, L.L.C., another limited liability company formed by the entities acquiring the Spaulding Building for the purpose of holding and maintaining the building.

On November 27, 2000, Lamprecht verbally abused a Firm staff member. When another member of the Firm entered the staff member's office, Lamprecht physically attacked him. The police were summoned and Lamprecht was cited for battery. On December 1, 2000, the Firm terminated Lamprecht's employment because of the incident. Lamprecht, as a member of the Firm, was subject to an employment agreement containing a covenant not to compete or interfere with the Firm's clients upon termination. However, with permission from the Firm, Lamprecht continued to serve clients until December 29, 2000. When Lamprecht re-fused to discontinue serving the Firm's clients after December 29, 2000, the Firm sued Lamprecht for a preliminary injunction to prevent his further interference with the Firm's clients. On January 11, 2001, the eve of a hearing regarding the preliminary injunction, Lamprecht and the Firm settled the lawsuit. Lamprecht signed a Settlement Agreement and Release of All Claims (Settlement Agreement). Under its terms, Lamprecht had seven days to withdraw from the Settlement Agreement, an option he did not exercise.

The Settlement Agreement indicated that Lamprecht and the Firm mutually released one another from any and all claims related to Lamprecht's employment with, and termination from, the Firm. The Settlement Agreement also stated that Lamprecht's employment with the Firm officially ended on December 31, 2000. The Settlement Agreement required that any rights Lamprecht had in Jordan be determined under the Operating Agreement. The Operating Agreement required withdrawal from Jordan upon termination from the Firm. The Operating Agreement also provided that upon withdrawal from Jordan, a member was only entitled to the balance of his or her capital account. Lamprecht's capital account totaled $3,864. Lamprecht refused Jordan's tender of the balance of his capital account.

On September 6, 2001, Lamprecht sued Jordan seeking: (1) a declaratory judgment stating that Jordan had to pay him fair market value for his interest in Jordan, not the book value represented by his capital account, and (2) damages in the amount Jordan was unjustly enriched by paying him the book value instead of fair market value. On November 26, 2001, Lamprecht filed a motion for partial summary judgment. The motion sought a determination that Lamprecht was not required to withdraw from Jordan or, if Jordan had a right to acquire his interest, that Jordan had to pay fair market value rather than book value. The portion of Lamprecht's partial motion for summary judgment seeking a declaratory judgment stating that he remained a member of Jordan was not based on any claim in his complaint. Lamprecht did not file a motion to amend his

complaint. According to Lamprecht's affidavit filed in support of his motion for partial summary judgment, the fair market value of his interest in Jordan, which is based on the value of the Spaulding Building, is $273,016.

On January 30, 2002, Jordan filed a motion for summary judgment.

On April 12, 2002, the district court heard the motions for summary judgment. At the same hearing, Jordan made a motion to strike portions of Lamprecht's affidavit in support of partial summary judgment. On April 30, 2002, the district court issued a memorandum decision and order granting Jordan's motion to strike paragraphs 7 and 9 through 14 of Lamprecht's affidavit, but denied the motion to strike regarding paragraph 3. One of the stricken paragraphs includes Lamprecht's estimation of his fair market value in the Spaulding Building.

The district court granted Jordan's motion for summary judgment and denied Lamprecht's motion for partial summary judgment. On May 2, 2002, the district court entered judgment in favor of Jordan, dismissing the case.

On May 14, 2002, Lamprecht filed a motion for reconsideration. On July 12, 2002, the district court issued a memorandum and decision order denying Lamprecht's motion to reconsider and granting Jordan attorney fees. On July 23, 2002, the district court entered an amended judgment granting attorney fees to Jordan.

Lamprecht timely filed this appeal.

## II.

## STANDARD OF REVIEW

■ Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' In a motion for summary judgment, this Court should liberally construe all facts in favor of the nonmoving party and draw all reasonable inferences from the facts in favor of the nonmoving party. Summary judgment must be denied if rea-

sonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented. *Iron Eagle Dev't, L.L.C. v. Quality Design Sys., Inc.,* 138 Idaho 487, 65 P.3d 509 (2003) (internal citations omitted); *See also Willie v. Bd. of Trustees,* 138 Idaho 131, 133, 59 P.3d 302, 304 (2002).

■ On appeal, this Court exercises free review over matters of law. *Polk v. Larrabee,* 135 Idaho 303, 308, 17 P.3d 247, 252 (2000).

## III.

## ANALYSIS

### A. The District Court Did Not Err In Granting Jordan's Motion For Summary Judgment.

■ Neither party disputes the facts in this case. As a result, the only issue is whether the district court correctly granted summary judgment on the grounds that, as a matter of law, Lamprecht was entitled to nothing more than the balance in his capital account with Jordan.

■ When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. *Iron Eagle Dev't, L.L.C.* at 491, 65 P.3d at 513 (citing *Opportunity, L.L.C. v. Ossewarde,* 136 Idaho 602, 605, 38 P.3d 1258, 1261 (2002)). An unambiguous contract will be given its plain meaning. *Id.* The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. *Id.* In determining the intent of the parties, this Court must view the contract as a whole. *Daugharty v. Post Falls Highway Dist.,* 134 Idaho 731, 735, 9 P.3d 534, 538 (2000). If a contract is found ambiguous, its interpretation is a question of fact. *Id.* (citing *Electrical Wholesale Supply Co., Inc. v. Nielson,* 136 Idaho 814, 823, 41 P.3d 242, 251 (2002)). Whether a contract is ambiguous is a question of law. *Boel v. Stewart Title Guar. Co.,* 137 Idaho 9, 13, 43 P.3d 768, 772 (2002) (citing *Terteling v. Payne,* 131 Idaho 389, 391–92, 957 P.2d 1387, 1389–90 (1998)). A contract is ambiguous if it is reasonably subject to conflicting inter-

pretations. *Lewis v. CEDU Educ. Serv., Inc.*, 135 Idaho 139, 144, 15 P.3d 1147, 1152 (2000).

Both the Settlement Agreement and the Operating Agreement are contracts. The relevant part of the Settlement Agreement unambiguously states: "[a]ny rights Lamprecht may have in ... Jordan ... will be determined under the agreement for th[e] compan[y]."

The relevant provisions of the Operating Agreement are found in Article VI. Under § 6.1, "[i]f a member's interest in [Jordan] is terminated by an Event of Dissociation ... the Company shall pay the member ... according to the formula, and pursuant to the terms, provided in this Agreement." Under § 1.4A, an event of dissociation includes: "withdrawal, death of a member, or any other event deemed an event of disassociation under Idaho Law." Section 6.3 governs the effect of termination:

> ***Termination of Employment,*** If for any reason (other than for retirement from the practice of accounting within 60 miles of Pocatello) a member terminates his employment with Jordan & Company, such cessation of employment shall automatically constitute an involuntary withdrawal of the member from the Company, in which event the member whose employment has ended shall sell his interest in the Company to the Company as provided in Section 6.2.

Under § 6.2, "the Company shall pay to the terminating member ... an amount equal to the balance in the terminating member's capital account as of the effective date of the termination."

Section 6.3 clearly states that, "if for any reason ... a member terminates his employment with Jordan & Company," the termination automatically constitutes an involuntary withdrawal, invoking § 6.2 of the Operating Agreement. The language "for any reason ... a member terminates his employment" is not ambiguous. It means that if a member terminates his or her employment with the Firm for *any reason,* other than retirement from the practice of accounting within 60 miles of Pocatello, that termination constitutes an involuntary withdrawal for purposes of.. determining that member's rights under the Operating Agreement. A member can only terminate his employment with the Firm voluntarily.

The facts do not support Lamprecht's argument that the Settlement Agreement is ambiguous as to whether he was involuntarily terminated. Lamprecht entered into the Settlement Agreement on his own volition. The Settlement Agreement unambiguously states Jordan's Operating Agreement will determine any rights Lamprecht has in Jordan. Additionally, Lamprecht failed to exercise his right to withdraw his consent within the seven days allowed by the Settlement Agreement. The act of entering into the Settlement Agreement shows Lamprecht terminated his employment with the Firm voluntary. Some confusion arises because the Operating Agreement, with the exception of retirement, calls any termination an involuntary withdrawal. However, that does not change the facts of this case that indicate Lamprecht voluntarily terminated his employment with the Firm by entering into the Settlement Agreement.

### B. Jordan Is Not Entitled To An Award Of Attorney Fees On Appeal.

Jordan claims it is entitled to an award of attorney fees on appeal based on the Operating Agreement and pursuant to Idaho Code §§ 12–121 and 12–120(3).

Where a valid contract between the parties contains a provision for an award of attorney fees, the terms of the contract establish a right to attorney fees. *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho 565, 568–69, 836 P.2d 511, 514–15 (1992). Regarding attorney fees in the case of a dispute between members, the Operating Agreement states: "In the event of any controversy, claim or dispute between the members hereto arising out of or relating to this Agreement, the prevailing member shall be entitled to recover from the non-prevailing member his reasonable expenses, including but not by way of limitation, attorney's fees." The language of this provision in the Operating Agreement refers only to disputes between members of Jordan. It does not refer

to disputes between a member, or former member as in this case, and Jordan as an entity. Therefore, Jordan is not entitled to an award of attorney fees based on the Operating Agreement because this case does not involve a dispute between members.

At this Court's discretion, attorney fees are appropriate if an appeal is frivolous, unreasonable, or without foundation. I.C. § 12–121; *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 330, 48 P.3d 651, 659 (2002). In cases, such as this, where the appellant raises a legitimate issue concerning contract interpretation, an award of attorney fees under I.C. § 12–121 is not warranted. *Mutual of Enumclaw Ins. Co. v. Pedersen,* 133 Idaho 135, 139, 983 P.2d 208, 212 (1999).

Under I.C. § 12–120(3), the prevailing party in a civil action involving a commercial transaction is entitled to an award of reasonable attorney fees. *Iron Eagle Dev't, L.L.C. v. Quality Design Systems, Inc.*, 138 Idaho 487, 65 P.3d 509 (2003) (citing *Great Plains Equip., Inc. v. Northwest Pipeline Corp.*, 136 Idaho 466, 471, 36 P.3d 218, 223 (2001); *Brooks v. Gigray Ranches,* 128 Idaho 72, 910 P.2d 744 (1996)). Other than citing § 12–120(3), Jordan offers no argument in support of its claim for attorney fees based on a commercial transaction. When a party fails to support an issue with authority or argument, this Court will not consider it.

*McPheters v. Maile,* 138 Idaho 391, 64 P.3d 317 (2003) (citing *Young Electric Sign Co. v. State, ex rel., Winder,* 135 Idaho 804, 810, 25 P.3d 117, 123 (2001); *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 967 (1996)). As a result, this Court will not consider whether Jordan is entitled to an award of attorney fees under I.C. § 12–120(3).

## IV.

## CONCLUSION

The district court correctly granted Jordan's motion for summary judgment because there are no genuine issues of material fact. Lamprecht was entitled to payment in the amount of the balance in his capital account, not the fair market value of his interest in Jordan. Jordan is not entitled to an award of attorney fees on appeal. Costs are awarded to the respondent.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS, and EISMANN concur.