# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37800

THOMAS WEISEL, a married man dealing
in his sole and separate property,

    Plaintiff-Appellant,

v.

BEAVER SPRINGS OWNERS
ASSOCIATION, INC., an Idaho corporation,

    Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Twin Falls, November 2011 Term

2012 Opinion No. 37

Filed: March 1, 2012

Stephen Kenyon, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Hon. John K. Butler, District Judge.

The decision of the district court is affirmed.

Haemmerle & Haemmerle, P.L.L.C., Hailey, for appellant. Fritz Haemmerle argued.

Lawson Laski Clark & Pogue, PLLC, Ketchum, for respondent. Erin F. Clark argued.

_____

HORTON, Justice

Thomas Weisel (Weisel) owned adjacent parcels, Lots 13 and 14, within the Beaver Springs Subdivision, now located in Ketchum, Idaho. In 1983, Weisel presented a development plan and request to unify his adjacent lots to the Beaver Springs Owners Association (Beaver Springs). At some point, Weisel's plan indicated that he intended that construction would occur within a setback zone that abutted the lots' shared border. Weisel and Beaver Springs executed an agreement (Agreement) whereby Beaver Springs approved the development plan and lot unification, removed the setback zone between the two lots, and mandated that the unified lot never be redivided or separately developed. When construction on Weisel's property was completed in 1985, all structures were located on what had been Lot 14. The former setback zone and the portion of the unified parcel that had been Lot 13 remained vacant.

1

In 2009, Weisel filed suit seeking to rescind or reform the Agreement. The district court granted Beaver Springs' motion for summary judgment. Weisel appealed and we now affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

At all times pertinent to this litigation, Weisel owned adjacent Lots 13 and 14, located within the Beaver Springs Subdivision. The Subdivision is in a rural setting, and the Subdivision's Declaration of Restrictions imposed restrictions intended to protect and maintain the Subdivision's rural appearance. Written approval of the Beaver Springs Subdivision Design Committee (Design Committee) was required to make any change to property within the Subdivision, including construction of buildings and fences and landscaping. The Design Committee was vested with absolute discretion to deny any request for a change. Setback zones prohibited construction along the borders of each lot. The setback zones between adjacent lots could be removed if (1) the lots had a common owner, (2) the Design Committee consented in writing and found "that any improvements to be constructed within these setback lines will not cause unreasonable diminution of the view from other property," and (3) the lots were combined and thence forward deemed one lot that "may not thereafter be split and developed as two parcels." The Declaration defined "Lot" as "any tract described in a recorded instrument or shown on a recorded plat," and stated that ownership of each Lot carried with it one membership, and each membership was entitled to one vote on Subdivision matters.

In 1983, there were existing structures on Lot 14 and Lot 13 was undeveloped. Weisel wished to construct additional structures and entered negotiations with both Beaver Springs and Blaine County in regard to his development plan.[1] Through architect James McLaughlin, Weisel sought a variance from the County necessary to construct servants' quarters larger than those permitted by county ordinance. In exchange for the variance, the County required Weisel to record a commitment to never construct a residence on Lot 13. Weisel contends that the Design Committee, which consisted of Bob Smith, Jean Smith, and Phil Ottley, required him to unify the adjacent lots and remove the setback lines because his development plan placed a portion of the proposed development within the Lot 14 setback zone that abutted the border shared by Lots 13 and 14. Other than development within the setback zone, it appears that Weisel's development plan otherwise complied with the limitations imposed by the Declaration. Nonetheless, there is

---

[1] The precise circumstances that ultimately gave rise to the parties' dispute are somewhat unclear because this case reaches the Court on appeal from a grant of summary judgment.

evidence in the record that the Design Committee expressed concerns regarding the density of development on Weisel's property.

Weisel entered into an Agreement with Beaver Springs on October 12, 1983, whereby Beaver Springs provided written consent to his development plan, unified Lots 13 and 14, and removed the setback zones between the Lots. The Agreement stated that the Design Committee had "determined that the improvements to be constructed in the setback lines along the common boundary of Lot 13 and Lot 14 will not cause unreasonable diminution of the view from other lots" and that "the setback lines along the common boundary of Lot 13 and Lot 14 are hereby removed and are of no further force and effect." The Agreement also stated that "upon execution of this Agreement, Lot 13 and Lot 14 shall be deemed one parcel and that such single parcel shall not hereafter be split and/or developed as two separate parcels." Weisel proceeded with development, and when construction was ultimately completed in 1985, all structures were located within Lot 14 and did not infringe upon the former setback zone. In 2004, Weisel again expanded the development on Lot 14. To this day, no development on Lot 14 infringes upon what was once the setback zone between Lots 13 and 14.

In 1986, Beaver Springs enacted a First Amendment to the Declaration of Restrictions (Amended Declaration) that expressly stated that the owner of a unified lot was entitled to only one vote in regard to Subdivision matters. Despite this amendment, for twenty-two years following the parties' execution of the Agreement, Weisel continued to exercise, and Beaver Springs continued to recognize Weisel as holding, two voting rights as to Subdivision matters. During that period, Weisel also annually paid assessments for two lots to Beaver Springs.

In 2005, Weisel sought rescission of the Agreement, and the parties' relationship began to deteriorate. According to Weisel, development of other lots within the Subdivision had far extended beyond the rural, natural aesthetic that had guided the parties when they entered into the Agreement in 1983. Weisel argued that neither the County nor the City of Ketchum, which has since obtained jurisdiction over the Subdivision, intended to enforce the restriction on Lot 13's development. Beaver Springs nonetheless refused to grant Weisel permission to redivide his property. This dispute prompted Beaver Springs to reassess Weisel's voting rights and to rescind one of those rights.

Weisel ultimately brought suit against Beaver Springs, asserting several claims. These include the claims that (1) the Agreement is void because it was fundamentally based upon the

3

mutual mistake that Weisel would develop within the setback zone; (2) since Weisel's development plan did not violate any Declaration provision, Beaver Springs provided no consideration to support the Agreement and the Agreement is therefore void; (3) since Weisel never constructed within the setback zone, Beaver Springs' consideration – in the form of permission to unify the lots and develop within the setback zone – failed, rendering the Agreement unenforceable; and (4) the Agreement never became binding because development within the setback zone was a condition precedent to adhesion of the terms of the Agreement. Weisel additionally argued that he was entitled to two votes under the Declaration of Restrictions, and alternatively that Beaver Springs was estopped from denying him a second voting right under the doctrine of quasi-estoppel. Weisel also asserted that he was entitled to reimbursement for the double assessments he had paid over the years.

The parties filed cross-motions for summary judgment. The district court granted Beaver Springs' motion on the following grounds: (1) the mutual mistake claim was barred by expiration of the statute of limitations; (2) there was no mutual mistake because development within the setback zone was not the fundamental reason the parties entered into the Agreement; (3) the Agreement was supported by consideration; (4) development within the setback zone was not a condition precedent to the terms of the Agreement; (5) under the plain language of the Declaration, Weisel owned one lot and therefore (6) was entitled to only one vote and (7) also was entitled to reimbursement and setoff for the excess assessments he had paid. Weisel appeals each of these holdings except for the district court's determination that he was entitled to reimbursement and setoff for the Subdivision assessments. Each party requests attorney fees on appeal.

## II. STANDARD OF REVIEW

This Court reviews a grant of summary judgment under the same standard used by the district court. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). We construe all disputed facts and make all reasonable inferences in favor of the nonmoving party. *Sprinkler Irrigation Co., Inc. v. John Deere Ins. Co., Inc.*, 139 Idaho 691, 695-96, 85 P.3d 667, 671-72 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

4

Flimsy or transparent contentions, theoretical questions of fact which are not genuine, or disputes as to matters of form do not create genuine issues which will preclude summary judgment. Neither is a mere pleading allegation sufficient to create a genuine issue as against affidavits and other evidentiary materials which show the allegation to be false. A mere scintilla of evidence is not enough to create an issue; there must be evidence on which a jury might rely.

*Petricevich v. Salmon River Canal Co.*, 92 Idaho 865, 871, 452 P.2d 362, 368 (1969) (quoting 3 Barron & Holtzoff, *Federal Practice and Procedure* § 1234 (Rules ed. 1958)).

## III. ANALYSIS

**A. Weisel waived his challenge to the district court's application of the statute of limitations by failing to address the matter in his initial appellate brief.**

The district court granted summary judgment dismissing Weisel's claim of mutual mistake on two grounds. First, the court ruled that:

. . . [Beaver Springs] was required to make a finding before allowing the combining of the two lots that if improvements were to be located in the setback areas that there would be no "unreasonable diminution of the view from other property." There is no dispute in the evidence that the County was requiring the two lots be combined as a condition of the approval of the variance request. The claim of the plaintiff that the Agreement was based on a mutual mistake of fact is without merit as a matter of law based on the undisputed evidence."

Second, the court ruled that Weisel was barred from asserting a claim of mutual mistake by expiration of the statute of limitations. Since proper application of the statute of limitations may wholly dispose of Weisel's mutual mistake claim, we first address that issue.

Beaver Springs contends that Weisel waived the statute of limitations issue on appeal because he did not include it in his issue statement and did not address it in his initial appellate brief. Weisel argues in his reply brief that he sufficiently raised the statute of limitations issue because the issue is subsidiary to the initial brief's substantive mutual mistake argument. Weisel also contends that independent discussion of the issue in his reply brief sufficiently raises the issue. Finally, Weisel contends that because he asserts the Agreement is void for mutual mistake, no statute of limitations applies. We hold that Weisel failed to adequately raise the statute of limitations issue and thus has waived the matter on appeal. Rule 35(a)(4), I.A.R., provides that an appellant's failure to include in his initial appellate brief a fair statement of an issue presented for review results in waiver of the issue. However, we have stated this rule will be relaxed when the issue is supported by argument in the briefs. *State v. Crowe*, 131 Idaho 109, 111, 952 P.2d 1245, 1247 (1998). Our statement in *Crowe* should have included the qualification that the issue

5

must be addressed in the appellant's opening brief. Rule 35(a)(6), I.A.R., requires that the opening brief "contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." Thus, we have repeatedly stated that we will not consider an issue not supported by argument and authority in the opening brief. *See e.g., Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010). Although an appellant may file a reply brief, the reply brief may only present additional argument in rebuttal to contentions advanced in the respondent's brief. I.A.R. 35(c). In the present case, Weisel's initial brief did not challenge the district court's conclusion that the statute of limitations required dismissal of Weisel's mutual mistake claim.

We acknowledge that I.A.R. 35(a)(4) provides that an appellant's "statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein." However, the question whether a claim for relief is subject to a statute of limitations is not a matter that is subsidiary to the question whether a contract was based upon a mutual mistake. Rather, this is simply an instance where the district court granted summary judgment on alternative grounds. The first ground was substantive; the district court found there was no genuine issue of material fact and that Weisel's mutual mistake claim "was without merit as a matter of law." The second ground was procedural; the district court found that Weisel failed to institute his action within the applicable statute of limitation. This Court has consistently held that an appellant's failure to address an independent ground for a grant of summary judgment is fatal to the appeal. *See e.g.*, *Andersen v. Prof'l Escrow Serv., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005). This is such a case. Thus, we do not reach the merits of Weisel's mutual mistake claim.[2]

## B. The district court properly granted summary judgment and dismissed Weisel's claims for relief based upon lack of consideration and failure of consideration.

Weisel contends that the district court erred in dismissing his claims that the consideration supporting the Agreement was inadequate. He argues that there were no grounds upon which Beaver Springs had the power to deny Weisel's development plan, and therefore Beaver Springs' approval of the plan did not constitute consideration. Weisel also argues that, to the extent that Beaver Springs provided consideration by granting him permission to build within

---

[2] Weisel would not have prevailed had we reached the merits of his argument. A contract based upon mutual mistake is merely voidable, not void. *Ranta v. Rake*, 91 Idaho 376, 386, 421 P.2d 747, 757 (1966) (quoting *Jennings v. Metro. Life Ins. Co.*, 166 S.W.2d 339, 344 (Mo. Ct. App. 1942)). An action for rescission based upon fraud or mistake is subject to the three year period of limitation provided by I.C. § 5-218(4). *Barnett v. Aetna Life Ins. Co.*, 99 Idaho 246, 249, 580 P.2d 849, 852 (1978) (Bakes, J., concurring).

the setback zone, the consideration ultimately failed because Weisel never built within the zone. We affirm the district court's grant of summary judgment as to both of Weisel's challenges to the sufficiency of consideration.

To be enforceable at law, an agreement must be supported by valid consideration. *Great Plains Equip., Inc. v. N.W. Pipeline Corp.*, 132 Idaho 754, 769, 979 P.2d 627, 642 (1999). Similarly, an agreement is unenforceable if consideration fails after the contract is formed. *World Wide Lease, Inc. v. Woodworth*, 111 Idaho 880, 884, 728 P.2d 769, 773 (Ct. App. 1986). Generally, courts will not assess the sufficiency of consideration. *McMahon v. Auger*, 83 Idaho 27, 38-39, 357 P.2d 374, 380 (1960). Consideration "must have some value in the eyes of the law; but in the absence of fraud or overreaching, the promisor, if competent, can fix on anything not in itself unlawful as a consideration and put his own value on it, and whether it is equivalent" to the benefit bargained for is a matter left to the determination of the parties. *Id.* (quoting 94 C.J.S. Wills § 113(1)). Where an agreement is captured within a written instrument, a presumption arises that it is supported by consideration. *W.L. Scott, Inc. v. Madras Aerotech, Inc.*, 103 Idaho 736, 741, 653 P.2d 791, 796 (1982). The party that asserts consideration is either lacking or has failed to support a written agreement bears the burden of proving that fact by a preponderance of the evidence. *Id.*

Beaver Springs argues that the question of consideration is immaterial because where "an agreement is fully executed on both sides, the question of consideration becomes immaterial." *Shore v. Peterson*, 146 Idaho 903, 912, 204 P.3d 1114, 1123 (2009) (citing *Marysville Dev. Co. v. Hargis*, 41 Idaho 257, 260, 239 P. 522, 522-23 (1925)). However, a contract is fully executed only if all parties thereto have each performed their contractual obligations. *Marysville Dev. Co.*, 41 Idaho at 260, 239 P. at 523. In the present case, Weisel is contractually obligated in perpetuity to forebear from redividing his property, and therefore he cannot be said to have fully performed his obligation and the Agreement cannot be said to be fully executed. We thus turn to the merits of Weisel's lack of consideration claim.

Weisel contends that Beaver Springs' consent to development could not constitute consideration because Beaver Springs lacked the power to deny a development plan if the plan complied with the Declaration of Restrictions' density and quantity of structure limitations. Since this question regards Beaver Springs' powers as created and constrained by the Declaration of Restrictions, its resolution requires the Court to look to the scope of those powers

7

as defined by the Declaration. If the language of the Declaration is unambiguous, its interpretation is a matter of law over which this Court exercises free review. *Bakker v. Thunder Spring-Wareham, LLC*, 141 Idaho 185, 190, 108 P.3d 332, 337 (2005).

The pertinent portion of the Declaration of Restrictions is found in article III, section 2, which provides:

> *The [Beaver Springs] Design Committee shall have complete discretion to approve or disapprove any change in the existing state of property but shall exercise such discretion with the following objectives in mind among others:* to carry out the general purposes expressed in this Declaration; to prevent violation of any specific provision of this Declaration or any Supplemental Declaration; to prevent any change which would be unsafe or hazardous to any persons or property; to minimize obstruction or diminution of the view of others; *to preserve visual continuity of the area* and to prevent a marked or unnecessary transition between improved and unimproved areas and any sharp definition of boundaries of property ownership; *to assure that any change will be of good and attractive design and in harmony with the rustic and natural setting of the area and will serve to preserve and enhance existing features of natural beauty*; to assure that materials and workmanship for all improvements are of high quality comparable to other improvements in the area; and to assure that any change will require as little maintenance as possible so as to assure a better appearing area under all conditions.

(Emphasis added). The Declaration's plain language thus makes clear that the Design Committee was empowered to consider whether proposed development would affect the aesthetics of the Subdivision. Since the Design Committee was vested with "complete discretion to approve or disapprove" proposed development plans, we hold that Beaver Springs indeed possessed the power to deny Weisel's development plan. Our conclusion is buttressed by the fact that the Agreement is contained within a written instrument, thus giving rise to the presumption that it was supported by consideration. Accordingly, we affirm the district court's grant of summary judgment on this issue.

We also affirm the district court's grant of summary judgment in regard to the alleged failure of Beaver Springs' consideration. Since Beaver Springs' permission to develop the lots was consideration in support of the Agreement, that consideration could only fail if Beaver Springs thereafter interfered with or prevented Weisel's approved development. A failure of consideration exists when a party fails to perform a contractual obligation. *World Wide Lease, Inc.*, 111 Idaho at 884, 728 P.2d at 773 (citing *Converse v. Zinke*, 635 P.2d 882 (Colo.1981); Restatement (Second) of Contracts § 237 cmt. a (1981)). Weisel contends that the absence of

8

development within Lot 14's setback negated Beaver Springs' consideration. However, Weisel points to no evidence in the pleadings, depositions, admissions, or affidavits in support of a finding that Beaver Springs prevented Weisel from developing within the setback zone.

To the contrary, the record contains evidence that Weisel either independently chose not to develop within the setback zone or was prevented from doing so by the County. Weisel testified at deposition that "[t]he original plans had the servants' quarters on the property line, not across it . . . and subsequent to going to the design review, I believe we changed that so that we – if for some reason I ever wanted to develop that property, we'd have a setback." Weisel also testified that although he entered the Agreement with the understanding that he could not build on Lot 13, he believed that over time he would be able to avoid the restriction. Further, Weisel testified that the "restriction on building on Lot 13 was not set in stone but was only going to occur if the County requested it." Weisel also admitted in his briefing that the County was responsible for restricting development on Lot 13, stating "[i]t is true, the building restriction was imposed by the County. . . . after Weisel and [Beaver Springs] has [sic] reached an agreement about combining the lots . . . ." Weisel cites no factual support for a finding that Beaver Springs prevented him from developing, or failed to permit him to develop, in accordance with the approved development plan. We thus affirm the district court's grant of summary judgment dismissing Weisel's claim that Beaver Springs' consideration failed.

**C. The district court's grant of summary judgment dismissing Weisel's claim of failure of a condition precedent was proper because the Agreement became enforceable upon its execution.**

Weisel contends that the parties intended his construction within the setback zone to be a condition required to occur in order for the restrictive terms of the Agreement to adhere. The district court held that the Agreement is unambiguous and as a matter of law did not create a condition precedent. We agree.

> A condition precedent is an event not certain to occur, but which must occur, before performance under a contract becomes due. A condition precedent may be expressed in the parties' agreement, implied in fact from the conduct of the parties, or implied in law (constructive) where the courts "construct" a condition for the purpose of attaining a just result. When there is a failure of a condition precedent through no fault of the parties, no liability or duty to perform arises under the contract. A condition precedent is distinguishable from a promise or covenant in that a condition creates no right or duty of performance in itself and its non-occurrence does not constitute a breach of the contract. A promise in a contract creates a legal duty in the promisor and a right in the promisee; the fact

9

or event constituting a condition creates no right or duty and is merely a limiting or modifying factor. A covenant is a duty under the contract, the breach of which gives a right to enforce the contract.

*World Wide Lease, Inc.*, 111 Idaho at 887, 728 P.2d at 776 (quotations and citations omitted). "Whether a provision in a contract amounts to a condition precedent is generally dependent on what the parties intended, as adduced from the contract itself." *McMinn v. Holley*, 86 Idaho 186, 192, 384 P.2d 229, 231 (1963). Courts look to the language of the contract to determine intent. *Bakker*, 141 Idaho at 190, 108 P.3d at 337 (quoting *Lamprecht v. Jordan, LLC,* 139 Idaho 182, 185-86, 75 P.3d 743, 746-47 (2003)). If the language is plain and unambiguous, interpretation is a matter of law, and this Court will give the contract as a whole its plain meaning. *Id.* If the parties' intent cannot be determined from a contract's plain language, interpretation of the contract is a question of fact.[3] *Id.*

In the present case, the Agreement's preamble states that Weisel desired Beaver Springs' written approval, while Beaver Springs desired that Weisel's development comply with the Declaration of Restrictions. Section 1 of the Agreement states that Beaver Springs "hereby approves" Weisel's development plan and request to unify Lots 13 and 14. Section 2 states that the Design Committee "has determined that the improvements *to be constructed* in the setback lines along the common boundary of Lot 13 and Lot 14 will not cause unreasonable diminution of the view from other lots." (Emphasis added). Weisel argues that the emphasized language indicates the parties' intent that construction would take place within the setback zone was an event, not certain to occur, which must occur in order for the Agreement to take effect.

However, the plain, unambiguous language of the Agreement leads the Court to conclude otherwise. Read as a whole, the Agreement demonstrates the parties' intent that its terms take immediate effect. To begin, the phrase identified by Weisel is part of a larger sentence that states that the Design Committee "determined that the improvements *to be constructed* in the setback lines along the common boundary of Lot 13 and Lot 14 *will not cause* unreasonable diminution of the view from other lots." (Emphasis added). It is thus evident that the parties intended only to communicate that the proposed improvements complied with the Declaration's mandate that views be unaffected by lot unification. Further, section 2 of the Agreement states that "[t]he

---

[3] In *World Wide Lease, Inc.*, 111 Idaho at 888, 728 P.2d at 777, the Court of Appeals flatly characterized the existence of a condition precedent as a question of fact. However, this determination flows from the intent of the parties, and therefore the circumstances of each case – such as whether a written agreement contains ambiguities – dictate whether the question is one of fact or of law.

parties, therefore, agree that the setback lines along the common boundary of Lot 13 and Lot 14 *are hereby removed and are of no further force and effect*." (Emphasis added). Section 3 states that "[t]he parties agree that *upon execution of this Agreement*, Lot 13 and Lot 14 *shall* be deemed one parcel and that such single parcel *shall not hereafter* be split and/or developed as two separate parcels." (Emphasis added). The emphasized language in each of these statements demonstrates the parties' intent that the setback lines would immediately cease to exist and that the lots would be deemed unified upon execution of the Agreement, not merely in the event that Weisel ultimately constructed improvements within the setback zone. Because the language of the Agreement, taken as a whole, plainly and unambiguously indicates that Weisel and Beaver Springs intended the Agreement to become enforceable upon execution, we affirm the district court's ruling on this issue.

**D. We affirm the district court's grant of summary judgment dismissing Weisel's claim of changed neighborhood conditions because that doctrine operates to extinguish covenants that restrict entire neighborhoods, not private agreements that place restrictions on single pieces of real property.**

Weisel argues that the Agreement should be extinguished because changed conditions in the Subdivision have frustrated the Agreement's purpose and rendered its enforcement unjust. This Court implicitly recognized the doctrine of changed neighborhood circumstances in *Ada County Highway District v. Magwire*, 104 Idaho 656, 659, 662 P.2d 237, 240 (1983). However, the doctrine does not operate to extinguish agreements that impose restrictions upon single pieces of real property. Rather, "[t]he 'change of neighborhood' test is inapplicable to covenants which are not part of a neighborhood development scheme and which affect only a relatively small number of lots." 20 Am. Jur. 2d *Covenants, Etc.* § 235 (2011) (citing *Lange v. Scofield*, 567 So. 2d 1299, 1301-02 (Ala. 1990)). The only property in the Beaver Springs Subdivision affected by the Agreement belongs to Weisel, and thus the doctrine of changed neighborhood circumstances is inapplicable.

In essence, Weisel asks the Court to reform an agreement for which the parties freely bargained. "[C]ourts will not lend themselves to striking down a contract, otherwise valid, simply because the vicissitudes of time proved it to be a 'bad' bargain for one of the parties." *Nw. Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 183, 646 P.2d 422, 425 (1982) (quoting *Kleinheider v. Phillips Pipeline Co.*, 528 F.2d 837, 842 (8th Cir. 1976)). We therefore affirm the district court's grant of summary judgment.

11

**E. The district court properly granted summary judgment in regard to Weisel's alleged voting rights.**

Weisel contends that the district court erred in concluding that the doctrine of quasi-estoppel did not apply to estop Beaver Springs from rescinding one of his voting rights because Beaver Springs recognized him as holding two valid voting rights for twenty-two years subsequent to the parties' execution of the Agreement.[4] We affirm the district court's conclusion that the doctrine of quasi-estoppel does not operate to preclude Beaver Springs from rescinding one of Weisel's voting rights. Weisel also argues that the district court erred in holding that the Declaration unambiguously mandated that the owner of a single lot was entitled to a single vote. We disagree.

Article V, section 2 of the Declaration of Restrictions states:

> There is and shall be one membership in the Association for each Lot. The owner or owners of each such Lot or other property area automatically becomes the owner or owners of the membership for that Lot or other property area and automatically have the benefits and are automatically subject to the burdens attributable to such membership. Each membership is and shall always be appurtenant to the title to a particular Lot or other property area and shall automatically pass with transfer of title to the same. Each membership is entitled to one vote in matters submitted to a vote of the membership of the Association.

Additionally, Declaration article II, section 17 states that:

> Two or more adjoining Lots, or other parcels of property of the same land classification which are under the same ownership may be combined and developed as one parcel. Setback lines along the common boundary line of the combined parcels may be removed with the written consent of the Design Committee, if the Design Committee finds and determines that any improvements to be constructed within these setback lines will not cause unreasonable diminution of the view from other property. If setback lines are removed or easements changed along the common boundary lines of combined parcels, the combined parcels shall be deemed one parcel and may not thereafter be split and developed as two parcels.

Article I, section 1 of the Declaration defines "Lot" as "any tract described in a recorded instrument or shown on a recorded plat."

---

[4] Beaver Springs contends that Weisel waived the voting rights issue on appeal because he did not also appeal the district court's finding that he owned a single lot, was obligated for only a single assessment, and was therefore entitled to reimbursement and offset for the double assessments that he had paid for over two decades. However, Beaver Springs does not support this assertion by reference to any legal authority and therefore Beaver Springs has waived this defense on appeal. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996) ("A party waives an issue cited on appeal if either authority or argument is lacking, not just if both are lacking.").

The plain language of these provisions is unambiguous, and therefore their interpretation is a matter of law. Read as a whole, these provisions of the Declaration provide that where the owner of adjacent lots obtains Design Committee approval to remove the setback lines along the lots' common boundary and records an instrument that demonstrates that change, the lots become one lot. Under the Declaration's plain language, unification of lots entitles the owner thereof to the benefits and burdens associated with ownership of a single lot, including a single membership and its accompanying single vote. The district court thus properly held that, as the owner of a single lot, as a matter of law Weisel is entitled only to a single vote.

We note that Weisel cites *Twin Lakes Village Property Association, Inc., v. Crowley*, 124 Idaho 132, 857 P.2d 611 (1993), for the proposition that voting rights are vested rights of which a landowner cannot be deprived. However, Beaver Springs correctly responds that *Twin Lakes* is distinguishable from the present case because the holding there was based on the bylaws' express prohibition against any amendment that would deprive a member of an existing right, such as a voting right. *Id.* at 134-36, 857 P.2d at 613-15. Weisel cites no analogous provision in the Declaration in this case and therefore our decision in *Twin Lakes* is inapposite.

**F. Beaver Springs is the prevailing party on appeal and is entitled to an award of attorney fees.**

Both parties request attorney fees on appeal pursuant to I.C. § 12-121 and article VI, section 4 of the Declaration of Restrictions. The Declaration provides that the party or parties successful "[i]n any action to enforce any . . . covenant, restriction or condition [contained in the Declaration], . . . shall be awarded costs including reasonable attorneys fees." Beaver Springs has prevailed in this appeal and is therefore entitled to an award of attorney fees pursuant to article VI, section 4 of the Declaration. Based upon this conclusion, we decline to address whether an award of attorney fees is appropriate under I.C. § 12-121.

## IV. CONCLUSION

We affirm the district court in all respects and award attorney fees and costs to Beaver Springs.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

13