**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51751**

| | | |
|---|---|---|
| DUSTIN STARK, an individual; AMY MANN, an individual, | ) ) ) | **Filed:  March 19, 2025** |
| Plaintiffs-Respondents, | ) ) | **Melanie Gagnepain, Clerk** |
| v. | ) ) ) | **THIS IS AN UNPUBLISHED OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| RICHARD PALMER and TERESA PALMER, | ) ) ) | |
| Defendants-Appellants. | ) ) ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Javier L. Gabiola, District Judge.

Judgment for declaratory relief and ordering specific performance, <u>affirmed</u>.

Lackey Law Group; Quentin W. Lackey, Nampa, for appellants.

Dustin Stark, Pocatello, pro se respondent.

Amy Mann, Pocatello, pro se respondent.

---

GRATTON, Chief Judge

Richard Palmer and Teresa Palmer appeal from the district court's judgment ordering specific performance in favor of Dustin Stark and Amy Mann.  We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Stark and Mann entered into a contract with the Palmers to purchase the Palmers' house located in Pocatello, Idaho.  The parties executed an Idaho Residential Purchase Agreement ("Agreement"), Standard Promissory Note ("Note"), Seller Financing Addendum ("Addendum"), and Lead-Based Paint Disclosure.  The Agreement stated the buyer "agrees to purchase the Property by payment of $218,290.40 (Dollars) as follows:  $170,000 Principle [sic] and $48,290.40

1

Interest @4 percent for 13 years." Section five of the Note stated, "Borrower may pre-pay this Note without penalty."

Sometime after execution of the documents, the Palmers sent a text message to Mann stating the Palmers had spoken to an attorney and that the documents were "not conveying what we all intended for it to convey." The Palmers also indicated they wished to terminate the Agreement. Stark attempted to prepay the loan, which included the remaining principal and interest accrued to that point. The Palmers thereafter refused to cooperate and did not convey title to Stark and Mann. Stark and Mann filed a complaint alleging the Palmers breached the contract by refusing to sell the property. The complaint requested declaratory relief, stating the contract was valid and enforceable, and for specific performance. The district court held a trial and entered a judgment. The judgment included: (1) a declaratory judgment that the Palmers breached the Agreement; and (2) an order for specific performance instructing the Palmers to dispose of the property to Stark and Mann for the principal amount owed and interest accrued up to the date of judgment.

## II.

## STANDARD OF REVIEW

Where a trial court sits as a finder of fact without a jury the court is required to enter findings of fact and conclusions of law. Idaho Rule of Civil Procedure 52(a); *Estate of Hull v. Williams*, 126 Idaho 437, 440, 885 P.2d 1153, 1156 (Ct. App. 1994). Our review of the trial court's decision is limited to ascertaining whether substantial, competent evidence supports the findings of fact, and whether the trial court correctly applied the law to the facts as found. *Borah v. McCandless*, 147 Idaho 73, 77, 205 P.3d 1209, 1213 (2009); *Cummings v. Cummings*, 115 Idaho 186, 188, 765 P.2d 697, 699 (Ct. App. 1988). Thus, we defer to findings of fact that are not clearly erroneous, but we freely review the trial court's conclusions of law reached by applying the facts found to the applicable law. *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 351, 715 P.2d 1019, 1021 (Ct. App. 1986). Where there is conflicting evidence, it is the trial court's task to evaluate the credibility of witnesses and to weigh the evidence presented. *Desfosses v. Desfosses*, 120 Idaho 354, 357, 815 P.2d 1094, 1097 (Ct. App. 1991). We will not set aside the trial court's factual findings as clearly erroneous if they are supported by substantial and competent, even if conflicting, evidence. *Kennedy v. Schneider*, 151 Idaho 440, 442, 259 P.3d 586, 588 (2011). Evidence is substantial and competent if a reasonable trier of fact would accept that evidence and

2

rely on it to determine whether a disputed point of fact was proven. *Hull v. Giesler*, 156 Idaho 765, 772, 331 P.3d 507, 514 (2014); *Hutchison v. Anderson*, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct. App. 1997).

This Court reviews a district court's ruling on equitable remedies for abuse of discretion. *KDN Mgmt., Inc. v. WinCo Foods, LLC*, 164 Idaho 1, 5, 423 P.3d 422, 426 (2018). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

## III.

## ANALYSIS

The Palmers raise various arguments addressing an alleged ambiguity or mutual mistake as to the purchase price of the real property in the Agreement.[1] The Palmers argue the district court erred in awarding the equitable remedy of specific performance.

### A.     Ambiguity

The Palmers argue the contract is ambiguous as to the purchase price and that the district court erred in its determination of the applicable law and assessment of facts. Stark and Mann argue the district court appropriately stated the standards for determining a contractual ambiguity and its analysis was supported by the evidence at trial.

Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact. *Porcello v. Est. of Porcello*, 167 Idaho 412, 421, 470 P.3d 1221, 1230 (2020). When the language of a contract is clear and unambiguous, its interpretation and legal effect are questions of law. *Lamprecht v. Jordan, LLC*, 139 Idaho 182, 185, 75 P.3d 743, 746 (2003). An unambiguous contract will be given its plain meaning. *Id*. The purpose of interpreting a contract is to determine the intent of the contracting parties at the time the contract was entered. *Id*. A contract is ambiguous if it is reasonably subject to conflicting interpretations. *Id*. If the terms of

---

[1]     Further, the appellant's briefs contain citations in the footnotes rather than the body of the text. This is inconsistent with the Idaho Appellate Rules and general practice of this Court, as footnoting should be used sparingly. *See, e.g.,* I.A.R. 35(e) ("References to the reporter's transcript and clerk's record must be within the body of the brief, and shall not be included as footnotes and endnotes.").

the contract are unambiguous, the Court does not look beyond the four corners of the documents. *Houston v. Houston*, 172 Idaho 264, 271, 531 P.3d 1161, 1168 (2023).

The Agreement contains the following provision:

**V. Purchase Price and Terms.**  The Buyer agrees to purchase the Property by payment of $218,290.40 (Dollars) as follows:  $170,000.00 Principle [sic] and 48,290.40 Interest @4 percent for 13 years.
**Seller Financing.**  Seller agrees to provide financing to the Buyer under the following terms and conditions:
   a) **Loan Amount:** $170,000.00
   b) **Interest Rate** (per annum):  4%
   c) **Home Warranty cost, Home Owners Insurance and Property Taxes** adjustable (based on Market and claims for Home Warranty and Home Owner Insurance and Property Taxes based on Bannock County Assessments) This is an Escrow Account through the Sellers.
   d) **Term:** 13 Years

The Note includes the following provisions:

ON THIS 3 DAY OF April, 2021, Dustin Stark and Amy Mann, of 375 Lark Lane Pocatello, Idaho 83201, hereinafter known as the "Borrower" promises to pay Richard Palmer and Teresa Palmer, of 301 w Striped Owl Street Kuna, Idaho 83634, hereinafter known as the "Lender", the principal sum of ($170,000.00) Dollars, with Interest accruing on the unpaid balance at a rate of (4%) per annum beginning as of the date above in the manner that follows:
   1. **PAYMENTS:**  Borrower shall pay
      **-INSTALLMENTS** of principal and interest in the amount of $170,000.00 @ 4 % Dollars ($218,290.40)
      If installments or interest only payments are checked above, such installment payment shall be due and payable on the 3 day of every month beginning on the 3 day of April 2021.
   2. **DUE DATE:**  The full balance on this Note, including any accrued interest and late fees, is due and payable on the 3 day of April, 2034.
   3. **PENALTY LATE FEE DUE IN THE EVENT OF DEFAULT:**  In the event that the Borrower fails to pay the note, in full, on the due date or has failed to make an installment payment due each day after payment due a 25.00 late fee will be attached to the payment for that month.  If in default for more than 2 consecutive months repossession proceedings will start.
   4. **ALLOCATION OF PAYMENTS:**  Payments shall be first credited any late fees due, then to interest due and any remainder will be credited to principal.
   5. **PREPAYMENT:**  Borrower may pre-pay this Note without penalty.

Lastly, Addendum includes the following provisions:

**2. CREDIT TERMS.**  The terms of the credit documents referred to in Section 1 above are as follows:

4

$170,000.00 principal amount of the note (the "Note"); interest at 4 % per annum; payable at approximately $1725.69 per month. The entire unpaid balance of 170,000.00 principal plus accrued interest of 48,290.40 is due in 13 years from date of the Note totaling an amount of 212,290.40. First payment due April 3, 2021.

All documents were signed in March 2021, several months prior to when this dispute arose.

Here, the district court determined the contract to be unambiguous because the Agreement, Note, and Addendum, "all reflect the same amount due and owing, the same address for purchase, and the same parties involved." We agree. The documents' plain meaning indicate that Stark and Mann purchased the property for $170,000, payable with an owner-financed loan in the principal amount of $170,000, with interest to accrue at four percent (4%) per year on a thirteen-year term, and the total cost after maturity of the loan would be $218,290.40. At trial, testimony from both parties indicates that they understood this contract to be for the sale of real property and that the total amount owed under the loan was to be $218,290.40 at the end of the thirteen years. Regardless of whether either party understood the "total cost" or "total amount owed" at the end of the loan to be a certain amount, the principal amount on the loan, $170,000, indicates the purchase price of the property, which remained unchanged across all the documents.

The Palmers also do not explain what the $170,000 principal amount could otherwise represent and simply conclude that the purchase price was $218,290.40 based on Ms. Palmer's personal perception and testimony at trial. Further, the Palmers have not explained why a pre-payment clause exists within the terms if the true purchase price was the $218,290.40 (an amount which only exists based on the calculation of interest at 4% on the principal amount of $170,000 at the end of the thirteen-year term of the loan). Because the "Borrower may pre-pay this Note without penalty," and the Note clearly states a principal amount of $170,000, Stark and Mann were able to exercise their right under the contract to furnish full payment of that principal amount, plus the accrued interest up to the date of pay-off. As such, the purchase price could not be $218,290.40 under the terms of the contract. The Palmers have failed to show the plain language of the documents in this case is *reasonably* subject to conflicting interpretations. *Lamprecht*, 139 Idaho at 185, 75 P.3d at 746. Therefore, the district court's determinations that the contract was unambiguous and the purchase price under the terms of the contract was $170,000 were supported by substantial and competent evidence.

**B.     Meeting of the Minds and Mutual Mistake**

The Palmers contend on appeal, as they did at trial, that the parties misunderstood the amount of the purchase price and that the actual purchase price was $218,290.40.[2] Because of this misunderstanding, the Palmers conclude that the ambiguity as to the purchase price indicates both a lack of a meeting of the minds to form a valid contract and a mutual mistake.

For contract formation, there must be a meeting of the minds, evidenced by a manifestation of intent to contract which takes the form of an offer and acceptance. *Tricore Invest., LLC v. Estate of Warren through Warren*, 168 Idaho 596, 615, 485 P.3d 92, 111 (2021). The meeting of the minds must occur on all material terms to the contract. *Id*. The material terms which must be identified in a contract to convey land include the parties to the contract, the subject matter of the contract, the price or consideration, and a description of the property. *Id*. Whether there was a meeting of the minds is an objective inquiry that does not focus on the subjective beliefs or intentions of the parties. *Id*.

Here, the instruments used to convey the property to Stark and Mann contain all the material terms necessary for a conveyance of real property. The Agreement, Note, and Addendum list the parties as the Palmers, Stark, and Mann, the subject matter of the contract (sale of the land with the seller to finance the purchase), the purchase price (as indicated by the $170,000 principal amount on the loan), and the description of the property. All documents were signed by the parties on the same day and were notarized. Mann presented testimony at trial indicating the parties had the documents ahead of time and discussed the contract before signing it at the bank in front of a notary. The Palmers have not shown how the evidence on the record fails to demonstrate that a meeting of the minds occurred. The district court was correct in its determination that the parties

---

[2]     The Palmers also argue the district court abused its discretion because it had "reframed" the Palmers' argument to be that Stark and Mann were required to pay the full thirteen years of interest, regardless of whether Stark and Mann prepay the principal early. In their brief, the Palmers characterize their arguments as pointing to an ambiguity as to whether the purchase price was $170,000 or $218,290.40, which included interest. However, in their reply brief, the Palmers state: "The [Palmers] have throughout this litigation maintained that the purchase price is $218,290.40, as explicitly stated in the Agreement, and not merely a 'total cost' resulting from financing terms." The district court understood, and did not reframe, the issue presented by the Palmers. The total financing stated in the Agreement factored into the analysis of the purchase price and the terms of the Agreement.

showed a clear manifestation of intent to contract for the sale of land at a price and terms, and this determination is supported by substantial and competent evidence.

As to mutual mistake, the mistake must be common to both parties. *Id.* A mutual mistake occurs when both parties, at the time of contracting, share a misconception regarding a basic assumption or vital fact upon which the bargain is based. *Hughes v. Fischer*, 142 Idaho 474, 482, 129 P.3d 1223, 1231 (2006). The party alleging the mutual mistake has the burden of proving it by clear and convincing evidence. *Id.* Rescission or reformation based on a mutual mistake is only permitted where the mistake is so substantial and fundamental as to defeat the object of that party. *Tricore*, 168 Idaho at 615, 485 P.3d at 111.

The basis of the Palmers' argument is that because Stark and Mann understood the purchase price to be $170,000 while the Palmers understood the purchase price to be $218,290.40, there is disagreement between the parties such that there was a mutual mistake as to the material fact of the purchase price. Stark and Mann's evidence at trial included the documents constituting the agreement between the parties. Those documents were correctly determined to be unambiguous, as explained above.

This alleged mistake was not common to both parties. Rather, the Palmers have only indicated a disagreement as to the purchase price, which is inconsistent with the unambiguous terms of the contract. In contrast, Mann testified that she and Stark understood the financing terms to mean that the purchase price is $170,000, which had 4% interest to accrue each year for a thirteen-year term, and that if the loan was carried to the end of its term the total cost would be $218,290.40. This is consistent with the plain language of the contract terms. As such, there was no mistake, misunderstanding, or misconception *common to both parties*. *Id.* The Palmers have presented no evidence that, at the time of contracting, both parties were mistaken about the terms of the contract. *See also id.* at 616, 485 P.3d at 112 ("But [a] party to a contract 'who makes a mistake unilaterally cannot rescind or modify the agreement absent' misrepresentation or knowledge of a mistake by the other party.") (quoting *Cline v. Hoyle & Assocs. Ins., Inc.*, 108 Idaho 162, 164, 697 P.2d 1176, 1178 (1985)). One party's claim as to a term in an agreement does not, by itself, establish a mutual mistake.

The object of the agreement was not frustrated, as asserted by the Palmers. The object of the agreement was to sell the real property to Stark and Mann, with financing to be provided by the Palmers. That is exactly what occurred and what the evidence supported at trial. The Palmers

7

have failed to show a mutual mistake exists such that the Palmers may rescind the contract. As such, the district court's determination that no mutual mistake occurred is supported by substantial and competent evidence.

## C. Specific Performance

The Palmers also claim the district court's remedy, ordering specific performance, should be reversed. Specific performance is an equitable remedy that can provide relief when legal remedies are inadequate. *Kessler v. Tortoise Dev., Inc.*, 134 Idaho 264, 270, 1 P.3d 292, 298 (2000). Inadequacy of legal remedies is presumed in an action for breach of a real estate purchase and sale agreement due to the perceived uniqueness of land. *Id.*

The district court's order of specific performance was proper. The court recognized the nature of the agreement as a real estate sale and that the parties had a correct understanding of the terms of the unambiguous agreement. The court conditioned specific performance on Stark and Mann's payment of the remaining principal and all interest accrued at four percent up to the date of judgment. This decision was within the court's discretion. The court applied the legal standards for specific performance in disputes regarding real estate sales and exercised reason in reviewing the background of the dispute, the needs of the parties, and the impacts of the remedy. Therefore, the district court did not abuse its discretion.

## IV.

## CONCLUSION

The district court's judgment for declaratory relief and ordering specific performance is affirmed. Stark and Mann are awarded costs on appeal.

Judge HUSKEY and Judge TRIBE **CONCUR**.