## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43554

GRANT LEE, JASON LEE, and SCOTT MCNAB,

 Plaintiffs-Respondents,

v.

JEREMY LITSTER and JESSICA LITSTER, husband and wife,

 Defendants-Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, December 2016 Term

2017 Opinion No. 2

Filed: January 20, 2017

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

The judgment of the district court is <u>affirmed</u>. Costs on appeal are <u>awarded</u> to respondents.

Litster Frost Lawyers, Boise, attorneys for appellants. Seth H. Diviney argued.

Stephen Beane, Boise, attorney for respondents.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

In a case arising out of Ada County, Jeremy and Jessica Litster ("Jeremy," "Jessica," and collectively, the "Litsters") appeal from a district court dismissal on summary judgment. The case concerns the enforceability of three promissory notes, which were prepared and issued by Jeremy to Jason Lee ("Jason"), Scott McNab ("McNab"), and a non-party, Rick Lee ("Rick"). In January, February, April, and June 2011, Jeremy made payments on these promissory notes. However, in July 2011, Jeremy stopped making payments because he learned that the Idaho Department of Finance had been notified regarding his investment solicitation activity.

1

Grant Lee ("Grant"), Jason, and McNab (collectively, "Plaintiffs") filed a complaint against the Litsters on July 18, 2014, for breach of contract. On April 7, 2015, Plaintiffs filed a motion for summary judgment, which was granted on July 24, 2015.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the enforceability of three promissory notes prepared and issued by Jeremy. In February 2009, Jeremy learned of an "investment opportunity"[1] that required a minimum buy-in of $500,000. Jeremy and Jason solicited close friends and family to "invest" by transferring money to them, which would later be transferred to Jeremy's relative, Marc Jenson ("Jenson").

The promissory notes at issue arise from three deposits: (1) McNab deposited $25,000 into Jeremy's bank account on March 12, 2009; (2) Jason deposited a total of $8,000 between February 28, 2009, and March 13, 2009; and (3) Scott Lee, who is not a party to this appeal, deposited $10,000 into Jenson's account on Rick's behalf.[2] In total, $900,000 was transferred to Jenson for the "investment." In return, Jenson issued four promissory notes to Jeremy, totaling $900,000. Additionally, Doug Roberts (Jeremy's former father-in-law) issued a personal guarantee, dated April 10, 2009, guaranteeing payment for the four promissory notes issued by Jenson.

Ultimately, the "investment" failed, and Plaintiffs and other "investors" pursued repayment from Jeremy. On December 14, 2010, a letter was delivered to Jeremy, which was endorsed by Plaintiffs. The letter provided:

> This is a final attempt to collect all promissory notes for all who invested in Marc Jenson's EB-5 project. Please send promissory notes to the following individuals that loaned you money for an EB-5 project, as promised. Of course per our original understanding and agreements, verbal or otherwise promised by you, these notes should have been issued the day our money was wired to Marc Jenson.
>
> . . .
>
> Your excuses are exhausted, and quite frankly reporting you to the Department of Finance for securities fraud has become a VERY real possibility. Selling

---

[1] Throughout its memorandum decision and order, the district court described the transfers of money as "investments." Such a description seems inaccurate because a promissory note is not ordinarily tendered in exchange for an investment. Further, the facts surrounding the investment/promissory note exchange are puzzling. The evidence submitted by the parties does little to clarify the circumstances.

[2] Rick sent a check for $10,000 to Grant. Instead of depositing the $10,000 with Jenson, Grant instructed Scott Lee to pay Jenson $10,000. Scott Lee did so because he owed Grant money. The $10,000 was deducted from Scott Lee's debt to Grant.

unregistered securities, which is what this ultimately is, and across state lines
without a license would involve the FBI for investigation and discovery, and this
would be very unfavorable for you.

. . .

Collectively, this letter has been drafted by those who loaned you money based on
the story that it would be used as capital to solicit Chinese investors for EB-5
projects in the United States. So, collectively as investors we are demanding that
you start fulfilling your legal obligations with what you promised. . . . Every
investor on this list has read and endorsed this as their own.

. . .

This is not a threat; this is sound advice from the few who are currently keeping
you from being investigated, pending that you begin demonstrating good faith to
repay the loans.

. . .

Failure to complete these requests will only further confirm your integrity and
intentions moving forward and will most likely result in turning your name over
to the Department of Finance for investigation.

A list of the sixteen "investors" to whom promissory notes were to be made was also on the letter. Rick, Jason, and McNab were listed as "investors."

About a month later, Jeremy prepared, signed, and issued promissory notes to Jason for $8,000, McNab for $25,000, and Rick for $10,000. The promissory notes issued to Jason and McNab were back-dated to March 12, 2009. Rick's promissory note was back-dated to March 5, 2009.

On January 13, 2011, Jeremy emailed Rick, stating: "Thank you for your patience with me in repaying the loan that Scott Lee made to me on your behalf. . . . [Y]ou didn't invest in Marc Jenson's EB-5 project. You made me a personal loan." Thereafter, Jeremy made payments pursuant to the promissory notes to Jason, Rick, and McNab. These payments were made in January, February, April, and June 2011. However, Jeremy ceased making payments in July 2011, because he learned that the Idaho Department of Finance had been notified regarding his investment solicitation activity. On June 20, 2014, Rick assigned his promissory note to Grant.

Plaintiffs filed a complaint against the Litsters on July 18, 2014. The complaint alleged three counts of breach of contract for failure to pay the amounts due according to the promissory notes. The Litsters answered on August 19, 2014, asserting, *inter alia*, the affirmative defense that the notes were issued under duress. On April 7, 2015, Plaintiffs filed a motion for summary judgment of the issues of breach of contract and duress.

3

On July 24, 2015, the district court issued its memorandum decision and order granting Plaintiffs' motion for summary judgment. On the issue of duress, the district court found in Plaintiffs' favor under two different legal theories. First, it found that the Litsters failed to provide sufficient evidence of their claim for duress to create a genuine issue of material fact. Second, the district court noted that the undisputed evidence demonstrated that Jeremy ratified the promissory notes by making payments thereon. It concluded that, in addition to the absence of a genuine issue of material fact, the Litsters' "claim for duress fails because [Jeremy] ratified the contracts by making payments on the [n]otes."

The district court also analyzed whether a genuine issue of fact was raised as to whether the contracts were breached. The district court noted that Plaintiffs' affidavits, which asserted Jeremy's nonpayment per the terms of the promissory notes, satisfied the initial burden of proving breach. The Litsters, on the other hand "failed to set forth *any evidence* creating a genuine issue of material fact regarding [Jeremy's] breach of the Promissory Notes." (Emphasis in original). Accordingly, the district court found that there was no genuine issue of material fact, and that Jeremy had breached the terms of the promissory notes in the amount listed in Plaintiffs' affidavits. The district court entered Judgment consistent with its memorandum decision, and the Litsters appealed.

### III. ISSUES ON APPEAL

1.  Whether the district court erred in granting summary judgment.

2.  Whether Plaintiffs are entitled to attorney's fees on appeal.

### IV. STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court utilizes the same standard of review used by the district court originally ruling on the motion." *Arregui v. Gallegos-Main*, 153 Idaho 801, 804, 291 P.3d 1000, 1003 (2012). Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho Rule of Civil Procedure 56(c). "When considering whether the evidence in the record shows that there is no genuine issue of material fact, the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163, 45 P.3d 816, 819 (2002). "If the evidence reveals no disputed issues of material fact, then only a question of law remains, over which this Court exercises free review." *Lapham v. Stewart*, 137 Idaho 582, 585, 51 P.3d 396, 399 (2002).

*Safaris Unlimited, LLC v. Von Jones*, 158 Idaho 846, 850, 353 P.3d 1080, 1084 (2015) (quoting *Conner v. Hodges*, 157 Idaho 19, 23, 333 P.3d 130, 134 (2014)).

## V. ANALYSIS

**A.    We affirm the grant of summary judgment to Plaintiffs because the Litsters failed to contest the alternate ground upon which summary judgment was granted.**

The Litsters make the following three arguments on appeal, which all concern the enforceability of the promissory notes: (1) "[t]here is a genuine dispute as to whether the money transfers were personal loans[;]" (2) "[t]he evidence is sufficient to support [the Litsters'] claim for duress to prevent enforceability of all the notes[;]" and (3) "[t]here is a genuine dispute as to whether any consideration was given by any [Plaintiff] to [the Litsters] to form the basis of the promissory notes." Crucially, the Litsters do not challenge the district court's conclusion that Jeremy ratified the promissory notes.

> This Court has held that when a district court grants summary judgment on multiple independent grounds, the appellant must successfully challenge all of those grounds to prevail on appeal. For example, in *Weisel v. Beaver Springs Owners Ass'n, Inc.*, the plaintiff sought to rescind a contract on the ground of mutual mistake. 152 Idaho 519, 524, 272 P.3d 491, 496 (2012). The district court granted summary judgment for the defendant on two alternative grounds; first, that no genuine issue of material fact existed and the claim was without merit, and second, that the mutual mistake claim was barred by the statute of limitations. *Id.* at 525, 272 P.3d at 497. We held that "an appellant's failure to address an independent ground for a grant of summary judgment is fatal to the appeal," and declined to consider the claim. *Id.* at 525–26, 272 P.3d at 497–98 (citing *Andersen v. Prof'l Escrow Servs., Inc.*, 141 Idaho 743, 746, 118 P.3d 75, 78 (2005)). Even if the appellant shows that the district court erred in granting summary judgment on some of the grounds, the judgment must be affirmed on the grounds not properly appealed. *Andersen*, 141 Idaho at 746, 118 P.3d at 78 ("[T]he fact that one of the grounds may be in error is of no consequence and may be disregarded if the judgment can be sustained upon one of the other grounds.") (citation omitted). Thus, if an appellant fails to contest all of the grounds upon which a district court based its grant of summary judgment, the judgment must be affirmed.

*AED, Inc. v. KDC Investments, LLC*, 155 Idaho 159, 164, 307 P.3d 176, 181 (2013).

The district court granted Plaintiffs' summary judgment motion regarding the enforceability of the promissory notes on two grounds: (1) the Litsters' failure to establish a prima facie claim for duress, and (2) Jeremy's ratification of the promissory notes. The Litsters assert error as to the first ground, arguing that "[t]he evidence is sufficient to support [a] claim for duress to prevent enforceability of all notes." The Litsters' opening brief is devoid of a

5

challenge to the second ground, upon which the district court granted summary judgment. Consequently, we decline to address the Litsters' argument regarding duress because the summary judgment can be affirmed on the unchallenged alternative ground that Jeremy ratified the promissory notes. *Id.* at 165, 307 P.3d at 182.

**B.     Plaintiffs are not entitled to attorney's fees on appeal.**

Plaintiffs' argument regarding attorney's fees on appeal—in its entirety—is as follows: "[Plaintiffs] are entitled to attorney fees on appeal, pursuant to I.C. § 12-120(3) as this litigation involves a commercial transaction."

> Under the Idaho Appellate Rules, a party is required to include in its opening brief "the contentions of the party with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon." I.A.R. 35(a)(6) (requirements for appellant); 35(b)(6) (requirements for respondent).

*Marek v. Lawrence*, 153 Idaho 50, 57, 278 P.3d 920, 927 (2012).

Plaintiffs have not presented any argument or citation to facts in the record showing that this is a commercial transaction. Therefore, they are not entitled to attorney's fees on appeal because they failed to comply with Idaho Appellate Rule 35(b)(6) in requesting attorney's fees.

## VI. CONCLUSION

The district court's judgment is affirmed. Costs on appeal are awarded to Plaintiffs.

Chief Justice J. JONES, Justices EISMANN, BURDICK and HORTON, CONCUR.