**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 49592**

TAMMY M. SANKEY and THOMAS A.
SANKEY, husband and wife,

   Plaintiffs-Appellants,

v.

JOSH IVEY, HOMETOWN PROPERTY
MANAGEMENT, LLC; NICOLE PERRY,
MIDTOWN TRAILER PARK, and
ANTELOPE LOOP, LLC,

   Defendants-Respondents.

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, April 2023 Term**

**Opinion Filed: August 30, 2023**

**Melanie Gagnepain, Clerk**

Appeal from the District Court of the First Judicial District of the State of Idaho,
Kootenai County. Lamont C. Berecz, District Judge. Anna M. Eckhart, Magistrate
Judge.

The decision of the district court is <u>affirmed</u>.

Kirkpatrick & Startzel, P.S., Spokane, Washington, for Appellants. Luke W.
O'Bannan submitted argument on the briefs.

Ramsden, Marfice, Ealy & De Smet, LLP, Coeur d'Alene, for Respondents Nicole
Perry and Midtown Trailer Park. Marcus E. Johnson submitted argument on the
briefs.

Hawley Troxell Ennis & Hawley, LLP, Boise, for Respondents Josh Ivey,
Hometown Property Management, LLC and Antelope Loop, LLC. David W.
Knotts submitted argument on the briefs.

_____

BRODY, Justice.

    This appeal addresses the business records exception to the hearsay rule and the
admissibility of non-owner testimony concerning the location of a real property boundary line. It
also addresses whether, pursuant to Idaho Code section 6-320(a)(3) (action for damages and

specific performance by tenant), a subtenant can maintain an action for damages against the lessors of property where there is no contractual relationship between the subtenant and the lessors.

## I.  NATURE OF THE CASE

A large, dead tree near a mobile home rented by the Sankeys fell and damaged the Sankeys' vehicles, killed one of their cats and traumatized the other, and caused Tammy Sankey to experience emotional distress. Proceeding *pro se*, the Sankeys filed a small claims action against the owner of the mobile home park where they lived and the owner and managers of their mobile home.

After losing in small claims court because they failed to prove on whose land the offending tree was located, the Sankeys filed for a trial de novo in magistrate court and paid for a land survey. The surveyor created two documents: a "Record of Survey" and an "Exhibit" (hereafter referred to as "Tree Exhibit"). The Sankeys submitted both documents attached to a joint declaration from them in opposition to motions for summary judgment filed by the owners and managers, along with a declaration from the Sankeys' neighbor setting forth the neighbor's lay testimony that the tree was located on the lot occupied by the Sankeys.

The owners and managers of the mobile home and the mobile home park filed motions to strike the declaration from the neighbor as well as portions of the Sankeys' declaration and the attached Record of Survey and Tree Exhibit. The magistrate court granted the motions, holding that no foundation had been laid for the Record of Survey and Tree Exhibit and that they were inadmissible hearsay. The magistrate court also struck the declaration of the neighbor because her testimony about the location of the fallen tree was not based on her personal knowledge. Without admissible evidence of who owned the land where the fallen tree was located, the magistrate court granted summary judgment in favor of the owners and managers. The magistrate court also held that the Sankeys had no cause of action under Idaho Code section 6-320 (action for damages and specific performance by tenant) because there was no contractual relationship between the Sankeys and the owners and managers. The magistrate court denied the Sankeys' motion for reconsideration. The district court, sitting in its appellate capacity, affirmed the magistrate court's decision. We affirm the decision of the district court.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Tammy and Tom Sankey ("the Sankeys") lived in a mobile home in Midtown Trailer Park in Hayden, Idaho, with their two cats, Ben and Mittens. Nicole Perry ("Perry") owned Midtown

2

Trailer Park. Antelope Loop, LLC ("Antelope Loop"), owned the mobile home the Sankeys occupied. Hometown Property Management, LLC ("Hometown Property"), managed the mobile home for Antelope Loop, and Josh Ivey ("Ivey") was a manager of Hometown Property (Perry, Antelope Loop, Hometown Property and Ivey are collectively referred to as "Owners and Managers"). St. Vincent de Paul CDA leased the mobile home from Hometown Property. The Sankeys subleased the mobile home from St. Vincent de Paul.

Between the lot occupied by the Sankeys and a neighboring property, owned by Mr. Gordon, there was a large, standing, dead tree. The Sankeys took issue with the tree shortly after they moved in as evidenced by an email sent by St. Vincent de Paul to Ivey on September 10, 2018, asking if he knew anything about it: "Also, do you know anything about the trees outside of this unit? The tenants are concerned that in the winter or during a bad storm, the trees will be knocked over onto their unit or one of their neighbors, since they are dead." There is also an email from Ivey to Perry dated October 5, 2016, three years before the incident at issue, about the hazard:

> Hi Nicole,
>
> Hope you are doing well!
>
> Attached is a photo of a dead tree that is alongside the home at 290 Mid ` Town. The tenant is concerned that it might blow over this winter . . . .
>
> Just wanted to make you aware of it so it can be addressed. Thanks so much!

Eventually, the tree fell. In June 2019, the Sankeys were outside loading their two cats into the car. One cat, Ben, was in a crate next to the car while Tammy was retrieving Mittens, her service animal, from near the front door of the mobile home. The tree fell onto the Sankeys' vehicles and Ben's crate. Mittens ran and hid. Ben succumbed later that night to his injuries from the tree falling.

Because of the trauma, Mittens is no longer able to be Tammy's support animal. Further, Mittens has developed anxiety and now requires medication, has a different temperament, and needs both "a change of daily routine, and pheromone therapy." Tammy has also suffered emotionally and physically since the tree fell.

This case began in small claims court. The location of the tree and ownership of the property were the main issues. The Sankeys contended the tree was located on their lot and thus the Owners and Managers were responsible for the tree. The Owners and Managers argued the tree was on Mr. Gordon's property, thus relieving them from any duty. After the first day of trial, the

3

magistrate court, pursuant to Rule 11 of the Idaho Rules for Small Claims Actions, granted the Sankeys a continuance so that they could gather and present evidence to prove who owned the property on which the tree had been located. The magistrate court explained: ". . . you have to have some proof that that's the property. There should be property lines. There should be a survey done at some point."

The magistrate court reconvened the small claims proceeding a few weeks later. After hearing from the parties again and viewing additional evidence, the magistrate court dismissed the small claims case because the Sankeys failed to prove who owned the tree. The magistrate court, in dismissing the case, explained to the Sankeys that if they were to appeal the decision, they would "start over from scratch" and that the Rules of Evidence, *like the rule against hearsay*, would apply:

> Now, in a small claims case either side can appeal, and when you appeal, what happens is you get what they call a trial de novo, which means you start over from scratch and – *but the difference is that then the Rules of Evidence apply, and you can have an attorney to represent you to do that, so the Rules of Evidence apply so you can't just hand documents out. You can't have hearsay here like this letter from Mr. Whitt, for example. He would – you'd have to have actual witnesses who would come and testify and – but the burden would still be the same to prove who is responsible,* but I can't find based on this evidence who owns the tree, frankly.

 (Emphasis added.)

The Sankeys appealed the small claims judgment to the magistrate court for trial de novo. While the case was pending, the Owners and Managers filed motions for summary judgment, arguing that the Sankeys could not support a claim for premises liability or negligence because they could not show that the Owners and Managers owned or occupied the land where the tree had been located. They also argued that the Sankeys could not support a claim arising out of a violation of Idaho Code section 6-320 (action for damages and specific performance by tenant) because the Sankeys were not tenants of the Owners or Managers.

In response to the motions for summary judgment, the Sankeys, still representing themselves *pro se*, submitted a joint declaration attaching as an exhibit a recorded Record of Survey done by professional land surveyor and civil engineer, Matthew B. Mayberry, P.L.S. #8962, which showed the boundary line between the Midtown Trailer Park property and the neighboring parcel owned by Mr. Gordon.

The Sankeys also attached the Tree Exhibit. The Tree Exhibit was a duplicate of the Record

of Survey, but also included an enlarged section that highlighted the boundary between the Midtown Trailer Park and the Gordon property, and, critically, marked the location of the fallen tree and set forth the name of the owner of the parcel where the tree had been located. The Tree Exhibit did not bear a recorder's stamp.



The Sankeys also submitted a declaration of their neighbor, Malissa Watts, who testified that she was "aware of the exact location of the former subject dead tree being within the Sankeys' yard…."

The Owners and Managers filed motions to strike portions of the Sankeys' joint declaration for lack of personal knowledge and to strike the Record of Survey and Tree Exhibit on evidentiary grounds. The magistrate court granted the motions to strike and for summary judgment. The Sankeys, after obtaining legal counsel, filed a motion for reconsideration, requesting that the court reverse its prior rulings. Alternatively, they argued in their reply brief that the magistrate court should reserve ruling on the motion to reconsider and give the Sankeys additional time to obtain a declaration from Mr. Mayberry. In support of the motion for reconsideration, the Sankeys filed a declaration of Tom Sankey, setting forth his personal knowledge of the location of the property line and the fallen tree. The magistrate court denied the Sankeys' motion for reconsideration

5

without allowing any additional time to obtain Mr. Mayberry's declaration.

The Sankeys subsequently appealed to the district court, contending the magistrate court erred when it granted the motions to strike and improperly granted the Owners and Managers' motions for summary judgment. The Sankeys also contended the magistrate court abused its discretion when it did not allow the Sankeys more time to get a declaration from Mr. Mayberry. The district court affirmed the decisions of the magistrate court. This appeal followed the district court's decision.

## III. STANDARD OF REVIEW

When this Court reviews the decision of a district court sitting in its capacity as an appellate court, we do not review the magistrate court's decision. *Bailey v. Bailey*, 153 Idaho 526, 529, 284 P.3d 970, 973 (2012). Rather, we are "procedurally bound to affirm or reverse the decisions of the district court." *State v. Korn*, 148 Idaho 413, 415 n.1, 224 P.3d 480, 482 n. 1 (2009).

"[W]hen considering an appeal from the granting of a motion for summary judgment, this Court's standard of review is the same as that used by the trial court in passing on the motion." *Pratt v. State Tax Comm'n*, 128 Idaho 883, 884, 920 P.2d 400, 401 (1996). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Lee v. Litster*, 161 Idaho 546, 549, 388 P.3d 61, 64 (2017) (citation omitted). If the record reveals that there is no genuine issue of material fact, "then only a question of law remains, over which this Court exercises free review." *Id.* (citation omitted).

When reviewing evidentiary rulings made in connection with a motion for summary judgment, this Court reviews those decisions for an abuse of discretion. *Dulaney v. St. Alphonsus Reg'l Med. Ctr.*, 137 Idaho 160, 163–64, 45 P.3d 816, 819-20 (2002) (citation omitted). To determine if a trial court abused its discretion, this Court considers whether the trial court (1) perceived the issue as one of discretion, (2) acted within the outer boundaries of that discretion, (3) acted consistently with the legal standards applicable to the specific choices available to it, and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 195 (2018).

## IV. ANALYSIS

**A. The district court did not err in affirming the magistrate court's grant of summary judgment and denial of the Sankeys' motion for reconsideration.**

6

The core of this appeal is the admissibility of evidence submitted by the Sankeys to show the location of the fallen tree. The Sankeys contend it is "outrageous to require a plaintiff to prove the location of a property boundary and then rule that the only person allowed to testify regarding the location of the line is the defendant – not even a certified survey by a licensed surveyor can be considered." The Sankeys argue the Tree Exhibit "was conclusive evidence proving the location of the tree and it meets all the technical requirements of the Rules of Evidence for admissibility." While we understand the Sankeys' frustration with having to navigate the Idaho Rules of Evidence, we disagree with their legal argument.

The magistrate court, when it dismissed the small claims case, carefully explained to the Sankeys that they had the right to a trial de novo in magistrate court, but that they would have to comply with the Idaho Rules of Evidence, including the rules pertaining to hearsay. This Court has long held that although litigants have the right to represent themselves, "[p]ro se litigants are held to the same standards and rules as those represented by an attorney." *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009) (quoting *Suitts v. Nix*, 141 Idaho 706, 709, 117 P.3d 120, 123 (2005)). "Pro se litigants are not accorded any special consideration simply because they are representing themselves and are not excused from adhering to procedural rules." *Id.* (quoting *Nelson v. Nelson*, 144 Idaho 710, 718, 170 P.3d 375, 383 (2007)); *Greenfield v. Smith*, 162 Idaho 246, 253, 395 P.3d 1279, 1286 (2017). This includes the Idaho Rules of Evidence.

Simply put, the evidence the Sankeys contend should have been considered in opposition to the Owners and Managers' motions for summary judgment does not comply with the Idaho Rules of Evidence. We agree with the district court that the magistrate court did not abuse its discretion when it excluded the challenged evidence and granted summary judgment in favor of the Owners and Managers, or when it denied the Sankeys' motion for reconsideration. Thus, we affirm the decision of the district court.

1. *The Tree Exhibit does not satisfy the requirements of the business records exception to the hearsay rule because the Sankeys failed to provide a certification from the record custodian or a qualified witness.*

The district court held the magistrate court did not abuse its discretion in excluding the Tree Exhibit because it was inadmissible hearsay and because it did not meet the requirements of the business records exception to the hearsay rule set forth in Idaho Rules of Evidence 803(6). The Sankeys contend the Tree Exhibit should not have been excluded because it meets the requirements

7

of Rule 803(6) and is a self-authenticating document under Idaho Rules of Evidence 902(7) and 902(11). We disagree.

Evidence submitted in support of or in opposition to a motion for summary judgment must be admissible under the Idaho Rules of Evidence. *Hecla Mining Co. v. Star–Morning Mining Co.*, 122 Idaho 778, 785, 839 P.2d 1192, 1199 (1992). Rule 56 sets forth the standard:

> An affidavit used to support or oppose a motion must be made on personal knowledge, *set out facts that would be admissible in evidence,* and show that the affiant or declarant is competent to testify on the matters stated. Sworn or certified copies of all papers or parts of papers referred to in an affidavit must be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

I.R.C.P. 56(c)(4) (emphasis added). The admissibility of evidence is a threshold matter to be addressed before applying the liberal construction and reasonable inferences rule to determine whether the evidence creates a genuine issue of material fact for trial. *See Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007) (citing *Carnell v. Barker Mgmt., Inc.*, 137 Idaho 322, 327, 48 P.3d 651, 656 (2002)). This Court applies an abuse of discretion standard when reviewing a determination of the admissibility of evidence offered in connection with a motion for summary judgment. *Id.* at 15, 175 P.3d at 177 (citing *McDaniel v. Inland Nw. Renal Care Grp.–Idaho, LLC*, 144 Idaho 219, 221, 159 P.3d 856, 858 (2007)).

The Sankeys submitted a joint declaration in opposition to the motions for summary judgment. The declaration contained several short paragraphs referencing the Tree Survey as an attachment:

> Defendants lack any tangible or real evidence to disprove the actual location of the subject dead tree or the identification of the EW property boundary dividing line between Midtown and neighboring parcel formerly owned by Craig Gordon to the West[.]
> *Plaintiffs hereby provide an authenticated copy of Survey Exhibit Map to prove as prima facie evidence[.]*
> *See Survey Exhibit Map to show the actual former location of the fallen subject tree and area of disturbance illustrated clearly sat with the property owned by Nicole Perry as Midtown aka Hayden Storage.*

(Emphasis added.) The Sankeys mistakenly attached what they called the "Survey Exhibit Map" (here it is referred to as the Tree Exhibit) to the declaration of Malissa Watts, their neighbor. The parties stipulated at the hearing on the motions for summary judgment that the Tree Exhibit and

other documents attached to the Watts' declaration would be deemed to be attached to the Sankeys' joint declaration.

Rule 802 of the Idaho Rules of Evidence provides that "hearsay" is not admissible except as provided by the rules. I.R.E. 802. " 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." I.R.E. 801(c)(1)–(2). A "statement" includes a written assertion. I.R.E. 801(a).

There does not appear to be any dispute that the Tree Exhibit constitutes hearsay. The document contains written assertions—the location of the tree and the name of the owner of the parcel upon which the tree was located—which were made outside the hearing on the motions for summary judgment and the Sankeys are using those assertions to prove the truth of what is asserted. This Court recently explained the difference between using a diagram for demonstrative purposes and, like the situation here, using the diagram for its truth as substantive evidence:

> In other words, when the drawing is admitted for demonstrative or illustrative purposes, "the witness' *testimony* is the evidence and the map or diagram is merely an aid to its understanding." 29A Am. Jur. 2d *Evidence* § 981 (emphasis added). Thus, the drawing is not hearsay because it is not an out-of-court statement admitted to establish a particular fact. *See id*.

> Importantly, this "must be distinguished" from admitting an out-of-court drawing for its truth as substantive evidence without it being offered to aid the testimony of an in-court witness with personal knowledge of what it depicts. *See id*. When the out-of-court drawing is admitted for its substance, "the instrument possesses within itself evidential characteristics tending to establish a particular fact[.]" *Id*. And without an in-court witness who has personal knowledge of that fact—the declarant of that fact is out-of-court, not subject to cross examination. In that context, the out-of-court drawing would meet the definition of hearsay to the extent it contains out-of-court statements offered for their truth.

*State v. Roman-Lopez*, 171 Idaho 585, 599, 524 P.3d 864, 878 (2023).

The Sankeys contend the Tree Exhibit should have been considered when deciding the motions for summary judgment because it falls within the exception to the hearsay rule set forth in Rule 803(6)—the so-called "business records exception." The exception provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
> > . . . .
> > > (6) **Records of a Regularly Conducted Activity.** A record of an act, event, condition, opinion, or diagnosis if:

9

(A) the record was made at or near the time by – or from information transmitted by – someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) *all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12);* and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

I.R.E. 803(6)(A)–(E) (emphasis added).

The district court held that the Tree Exhibit did not fall within this exception because, among other reasons, the Sankeys did not comply with subsection (D)—which required the Sankeys to provide a certification from Mr. Mayberry or the custodian of his company's records setting forth the conditions in subsections (A)–(C). The Sankeys contend Mr. Mayberry "certified" the Tree Exhibit when he placed his surveyor's seal on the document pursuant to Idaho Code section 54-1215, which requires that the final work product of a surveyor be "sealed, signed and dated as a final document if the document is intended to be relied upon to make policy decisions important to the life, health, property, or fiscal interest of the public." I.C. § 54-1215 (3)(b). The Sankeys argue that to require any further extrinsic evidence of authenticity would undermine the "self" authenticating part of Idaho Rule of Evidence 902(11). The Sankeys also argue, for the first time on appeal, that Mr. Mayberry's seal satisfies the authentication requirements of Rule 902(7) governing trade inscriptions. The Sankeys' arguments are contrary to the plain language of Rules 803(6)(D) and 902(11) and misapprehend authentication requirements.

Subsection (D) of the business records exception requires the custodian of the record or another qualified witness (for example, Mr. Mayberry) to testify to the conditions set forth in subsections (A)–(C) of Rule 803(6) or provide a "certification" that complies with Rule 902(11). Rule 902(11) provides:

The following items of evidence are self-authenticating; they require no extrinsic evidence of authenticity in order to be admitted:

. . . .

10

**(11) Certified Domestic Records of a Regularly Conducted Activity.**
The original or a copy of a domestic record that meets the requirements of
Rule 803(6)(A)-(C), *as shown by a certification of the custodian or another
qualified person.* As used in this subsection, *"certification" means a written
declaration signed in a manner that, if falsely made, would subject the
maker to a criminal penalty in the jurisdiction where the certification is
signed.* Before the trial or hearing, the proponent must give an adverse party
reasonable written notice of the intent to offer the record – and must make
the record and certification available for inspection – so that the party has a
fair opportunity to challenge them.

I.R.E. 902(11) (emphasis added).

Critically, and a point the Sankeys appear to miss, the first sentence of Rule 902(11) requires that the *certification* show that the record at issue meets the requirements of subsections (A)–(C) of the business record exception. Under the rule a "certification" means a "written declaration[.]" I.R.E. 902(11). While Rule 902(11) does not go so far as to dictate the language that must be used in a written declaration, this Court's recent decision in *Department of Finance, Securities Bureau v. Zarinegar* illustrates the type of language that will suffice. 167 Idaho 611, 474 P.3d 683 (2020).

In *Zarinegar*, the Department of Finance filed an action against a seller of securities and its principal, alleging they had engaged in securities fraud. 167 Idaho at 617, 474 P.3d at 689. The Department moved for summary judgment and submitted financial records from Wells Fargo Bank in support of that motion. *Id.* at 625, 474 P.3d at 697. Zarinegar moved to exclude those records, arguing they lacked foundation and constituted hearsay. The district court denied the motion to strike, and this Court affirmed the decision. *Id.* at 625–26, 474 P.3d at 697–98. In doing so, this Court quoted approvingly from the declaration of the Wells Fargo employee who certified that the requirements of Rule 803(6)(A)–(C) had been met:

Exhibits N through Z contain the financial records of Zarinegar and PRM obtained
from Wells Fargo Bank. To adhere to the requirements of I.R.E. 902(11), the
Department submitted a "Business Records Declaration" of Krista Yu, an employee
of Wells Fargo. *Yu's declaration provided that she was a "duly authorized and
qualified witness to certify the authenticity" of the Wells Fargo financial records.
The records "[w]ere prepared ... in the ordinary course of business at or near the
time of the acts ... described in the records" and "[i]t was in the ordinary course
of business for [Yu] ... with knowledge of the act ... to make the record or transmit
the information therein to be included in such record." The declaration was also
signed by Yu under penalty of perjury under the laws of Idaho.* Zarinegar also failed

11

> to show that the documents' method or circumstances of preparation were untrustworthy aside from conclusory statements attacking the computer system that generated the financial records. Thus, the exhibits containing financial records obtained from Wells Fargo were self-authenticating under I.R.E. 902(11). Adequate foundation was provided. The records were properly found admissible under I.R.E. 803(6).

167 Idaho at 628, 474 P.3d at 700 (emphasis added) (alterations in original).

The Sankeys did not provide a written declaration from a records custodian or a qualified witness (like Mr. Mayberry) attesting to the requirements of Rule 803(6)(A)–(C). Mr. Mayberry's surveyor's stamp certifies that the work was done by him or under his responsible charge. *See* I.C. § 54-1215(3)(c) ("The application of the licensee's seal and signature and the date shall constitute certification that the work thereon was done by him or under his responsible charge."). However, the stamp does not attest to the elements of Rule 803(6)(A)–(C), which means that it does not satisfy the requirements of Rule 902(11). Because the requirements of Rule 803(6)(D) were not met, the Tree Exhibit does not qualify for the business records exception to the rule against hearsay. We need not address the district court's rulings on how the other elements of Rule 803(6) were not met.

For the first time on appeal, the Sankeys now argue that Mr. Mayberry's stamp meets the authentication requirements of Rule 902(7) because it qualifies as a "sign" purporting to have been affixed in the course of business and indicating origin, ownership, or control. *See* I.R.E. 902(7). Setting aside the Sankeys' failure to make this argument below, authentication of a document does not necessarily mean that it is admissible. The "authentication" of a document means producing evidence "sufficient to support a finding that the item is what the proponent claims it is." I.R.E. 901(a). "Self-authenticating" simply means that there is no extrinsic evidence of authenticity required in order to be admitted. A "self-authenticating" document, however, is not necessarily an admissible document. In this case, the Tree Exhibit is also inadmissible because it is hearsay. The business records exception to the hearsay rule only allows for the admission of documents that are authenticated in accordance with Rules 902(11) and (12). Rule 902(7) is not part of the business records exception, and, as such, the Sankeys' argument is without merit.

Finally, the Sankeys contend the Tree Exhibit should have been admitted under the general exception to the hearsay rule found in Idaho Rule of Evidence 803(24). It provides that a hearsay statement not specifically covered by any of the other hearsay exceptions can be admissible if:

12

i. the statement has equivalent circumstantial guarantees of trustworthiness.
ii. it is offered as evidence of a material fact;
iii. it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
iv. admitting it will best serve the purposes of these rules and the interests of justice.

I.R.E. 803(24)(A). The decision to admit evidence under this rule is a discretionary call for the trial court. *State v. Giles*, 115 Idaho 984, 987, 772 P.2d 191, 194 (1989). As pointed out by the district court, the magistrate court considered all the elements of Rule 803(24) and held that the Tree Exhibit failed to meet the first, third, and fourth prongs of the Rule. On appeal, the Sankeys essentially make the same arguments they made to the magistrate court and ask us to second-guess the magistrate court's decision. That is not our role. The Sankeys have not presented any argument as to how the magistrate court abused its discretion. As such, we affirm the district court's conclusion that the magistrate court did not abuse its discretion when it refused to admit the Tree Exhibit under the catchall exception to the hearsay rule.

2. *The Sankeys' and Watts' declarations as to whose property the tree was on are not supported by personal knowledge.*

The Sankeys challenge the decision to exclude their testimony regarding on whose property the tree was located. In the Sankeys' joint declaration supporting their objection to the defendants' motion for summary judgment they state that the exhibit map shows that the tree "clearly sat with the property owned by Nicole Perry as Midtown . . . ." However, the magistrate court determined that the Sankeys' statements regarding the accuracy of the survey were inadmissible because they were not based on the Sankeys' personal knowledge. Mr. Sankey provided an additional declaration in support of the Sankeys' motion for reconsideration. In that declaration, Mr. Sankey states that the tree was "on the same lot as the mobile home we were renting." The magistrate court reiterated that the Sankeys did not have personal knowledge of the boundary line.

The Sankeys also challenge the decision to exclude portions of the declaration of Malissa Watts, their neighbor who lived across the roadway from them for about a year. The magistrate court excluded two statements in Watts' declaration:

- "That I am aware of the exact location of the former subject dead tree being within the Sankeys' yard at Midtown Mobile Home Park and the disturbed area remaining from uprooting on June 22nd, 2019."

- "I have had the opportunity to read the Declarations of Mike Whitt which is [sic] contradicts his handwritten statement on the Sankeys [sic] 'lot' and is perjurous [sic] and those of Nicole Perry's [sic] and Josh Ivey's [sic] which are untrue and should not

13

[be] considered when they were aware of the truth of <u>the correct location of the dead tree being on the property leased to the Sankeys</u>."

Only the underlined portion of the second statement was excluded. The magistrate court excluded these statements based on Rules 602 and 701 of the Idaho Rules of Evidence, reasoning that the statements were conclusory and without foundation for her personal knowledge. The district court held that the magistrate court did not abuse its discretion in excluding the evidence. We agree.

As a threshold matter, the Sankeys are correct that, under *Hook v. Horner*, "an accurate survey is not the only evidence which is admissible to prove a property boundary." 95 Idaho 657, 662, 517 P.2d 554, 559 (1973). However, all evidence, including declarations, must still be admissible. At issue here is Idaho Rule of Evidence 602, the "Need for Personal Knowledge." It provides:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

I.R.E. 602. Also at issue is Rule 701, which governs opinion testimony by lay witnesses:

> If a witness is not testifying as an expert, testimony in the form of an opinion or inference is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

I.R.E. 701.

A trial court can strike specific portions of a declaration if those portions are not based on personal knowledge. *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012). For example, in *Mortensen v. Baker*, we considered whether a declaration containing statements concerning a woman's own health was admissible. 170 Idaho 744, 754, 516 P.3d 1015, 1025 (2022). This Court determined that the statements regarding her own health were admissible, but the statements about what her doctor told her were inadmissible. *Id*. at 754–55; 516 P.3d at 1025–26. We held, "[i]f the declaration contains inadmissible statements, the district court must strike those statements. Any portion of Mortensen's declaration not based on her own personal observation were properly stricken." *Id*. at 754, 516 P.3d at 1025 (citing *Fragnella*, 153 Idaho at

14

276, 281 P.3d at 113 (holding that the district court did not abuse its discretion in striking portions of an affidavit that lacked foundation)).

The portions of the declarations challenged by the Owners and Managers were specific to the question of the location of the property line between Midtown Trailer Park and Mr. Gordon's property. The Sankeys argue that tenants should be competent to testify regarding boundary lines without themselves being professional surveyors. However, the case the Sankeys rely on to support such a notion designates a landowner as a competent witness, not a tenant. *See Hook v. Horner*, 95 Idaho 657, 663, 517 P.2d 554, 560 (1973). The Sankeys do not reference any authority in which that privilege is extended to tenants, and we decline to do so here.

Additionally, there is no evidence that Watts had personal knowledge of the location of the property line. The Sankeys argue that Watts had "personal knowledge of the tree, its location, the lot rented by the Sankeys, and the use of the lot." However, the portions of the declaration that were excluded are not about the tree—they were about ownership of the property.

Beyond the facts that "Watts lived within sight of the tree and believed it was located on Perry's land based on personal observations and understanding of the various lots," the Sankeys did not provide any evidence to support their contention that Watts has personal knowledge of the boundary lines. Thus, we hold that the district court did not err in affirming the magistrate court's decision to strike portions of the Watts declaration.

**B. The district court did not err in its analysis of the "inferences" drawn by the magistrate court and their impact on the grant of summary judgment.**

The Sankeys argue that, contrary to the standard of review for summary judgment claims, the magistrate court rendered credibility determinations and weighed evidence against the Sankeys. The Sankeys claim that the magistrate court inferred that, because Perry did not take action in response to the emails warning her about the dead trees, she did not own the trees. As such, the Sankeys argue the magistrate court violated the rule that "[w]hen deciding a motion for summary judgment, all facts are construed in the light most favorable to the non-moving party and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party." *Parks v. Safeco Ins. Co. of Illinois*, 160 Idaho 556, 561, 376 P.3d 760, 765 (2016).

This argument is not well taken, as the Sankeys misconstrue the magistrate court's order. Regarding the emails, the magistrate court said, "the emails are nothing more than correspondence between these people, and do not contain any evidence sufficient to support the allegation that any

Defendant in this action is responsible for the damage caused to Mr. and Mrs. Sankey." The magistrate court, in its own words, did not draw an inference; it simply found that the emails did not show what the Sankeys claimed them to show.

The district court affirmed, explaining "which inference ought to be drawn is unclear to this Court, but what is clear is that the magistrate court did not abuse its discretion in finding that these emails did not support the Plaintiffs' claims." Because no inferences were actually drawn, we affirm the finding of the district court that the magistrate court did not apply the wrong summary judgment standard by inferring facts in favor of the Owners and Managers.

**C. The district court did not err when it held that the magistrate court did not abuse its discretion when it denied the Sankeys' request for more time to obtain a declaration from Mr. Mayberry.**

In their reply in support of their motion for reconsideration, the Sankeys requested that, if the magistrate court found a declaration from Mr. Mayberry to be "somehow crucial," the court should reserve its ruling and grant them time to obtain and submit the declaration. The magistrate court issued its denial of the motion for reconsideration without providing the Sankeys time to get the declaration. On appeal, the district court held the magistrate court did not abuse its discretion when it denied the request, reasoning the Sankeys had ample time to cure the foundational defects that plagued their case. We agree.

The Sankeys correctly point out that the magistrate court did not actually issue a ruling denying their request for additional time. If a trial court fails to rule on a motion, we presume it was denied. *State v. Wolf*, 158 Idaho 55, 61–62, 343 P.3d 497, 503–04 (2015). The standard of review on appeal remains the same. The denial of a discretionary motion is only reversed if there was an abuse of discretion.

The circumstances in this case do not support the idea that denying more time for the Sankeys was an abuse of discretion. The primary reason presented to the magistrate court that the Sankeys needed more time was that they did not believe a declaration supporting the Tree Exhibit was necessary; they argued that belief instead of explaining why they did not get a declaration. The Sankeys imply for the first time on appeal that their ability to obtain a timely declaration was impeded by the fact that the judgment dismissing the claim was mailed directly to the Sankeys rather than counsel of record. However, that argument should have been made directly to the magistrate court in a motion properly filed in accordance with the requirements of Rule 7 of the Idaho Rules of Civil Procedure.

16

The Sankeys have not shown that the denial of the motion to continue was an error on the part of the magistrate court or that affirming that decision was an error on the part of the district court. Thus, we affirm the decision of the district court.

**D. The district court did not err in affirming the summary dismissal of the Sankeys' claim under Idaho Code section 6-320(a)(3).**

In addition to their premises liability claim, the Sankeys brought suit against the Owners and Managers under Idaho Code section 6-320(a)(3). The statute authorizes a tenant to bring suit against a landlord for damages and specific performance for "[m]aintaining the premises in a manner hazardous to the health or safety of the tenant:"

> (a) A *tenant* may file an action against a landlord for damages and specific performance for:
> . . . .
> (3) Maintaining the premises in a manner hazardous to the health or safety of the *tenant*. . . .

I.C. § 6-320(a)(3) (emphasis added).

The magistrate court dismissed the Sankeys' claim under this statute, holding that the Sankeys were not a "tenant" of Owners or Managers; rather, they were a tenant of St. Vincent de Paul. The Sankeys filed a motion for reconsideration, arguing that the term "tenant" should include a "subtenant" since other provisions of the Forcible Entry and Unlawful Detainer statutes include subtenants. The magistrate court disagreed and, based on the statutory construction principle of *expressio unius est exclusio alterius* ("the expression of one thing is the exclusion of another"), concluded there was a reason to distinguish between tenants and subtenants. The district court agreed with the magistrate court's reasoning and affirmed the decision. The Sankeys contend the district court's decision was erroneous.

"[T]he interpretation of a statute is a question of law over which this Court exercises free review." *Insight LLC v. Gunter*, 154 Idaho 779, 783, 302 P.3d 1052, 1056 (2013). The Legislature has not defined the term "tenant" as it is used in the Forcible Entry and Unlawful Detainer statutes. Invoking the principle of *generalia verba sunt generaliter intelligenda* ("general words are to be understood in a general sense"), the Sankeys contend "tenant" should be interpreted to include "subtenant" because that is how the term is generally understood. However, the other provisions of the Forcible Entry and Unlawful Detainer statutes, which the Sankeys pointed to when they addressed this issue with the magistrate court, expressly distinguish between tenants and

17

subtenants. For example, in defining what constitutes an unlawful detainer, section 6-303 provides that a tenant is guilty of an unlawful detainer if he continues in wrongful possession of the property or if his subtenant holds over:

> A *tenant* of real property, for a term less than life, is guilty of an unlawful detainer:
>
> 1.   When he continues in possession, *in person or by subtenant*, of the property or any part thereof, after the expiration of the term for which it is let to him, without the permission of his landlord, or the successor in estate of his landlord, if any there be; but in case of a tenancy at will, it must first be terminated by notice, as prescribed in the civil code.

I.C. § 6-303(1) (emphasis added).

Similarly, section 6-308 distinguishes between a tenant and a subtenant for purposes of identifying the parties to be named as defendants:

> No person other than the *tenant* of the premises, and *subtenant*, if there be one, in the actual occupation of the premises when the notice herein provided for was served, need be made parties defendant in the proceeding, nor shall any proceeding abate nor the plaintiff be nonsuited for the nonjoinder of any persons who might have been made parties defendant; but when it appears that any of the parties served with process or appearing in the proceeding are guilty of the offense charged, judgment must be rendered against them. Any person who shall become a *subtenant* of the premises or any part thereof after the service of notice as provided in this chapter shall be bound by the judgment. *In case a married woman be a tenant or a subtenant*, her coverture shall constitute no defense; but in case her husband be not joined, or unless she be doing business as a sole trader, an execution issued upon a personal judgment against her can only be enforced against property on the premises at the commencement of the action.

I.C. § 6-308 (emphasis added).

Section 6-316(1) expressly provides that both tenants and subtenants of larger parcels of land have the right to pay judgments for past due rent within a specified period of time and the tenant will be restored to his estate:

> When the proceeding is for an unlawful detainer after default in payment of rent where the tract of land is larger than five (5) acres, and the lease or agreement under which the rent is payable has not by its terms expired, execution upon the judgment shall not be issued until the expiration of five (5) days after the entry of the judgment, within which time the *tenant, or any subtenant*, or any mortgagee of the term, or other party interested in its continuance, may pay into court, for the landlord, the amount found due as rent, with interest thereon, and the amount of the damages found by the jury or the court for the unlawful detainer, and the costs of the proceeding, and thereupon the judgment shall be satisfied and the *tenant* be restored to his estate; but if payment as here provided be not made within the five

(5) days, the judgment may be enforced for its full amount, and for the possession of the premises. In all other cases the judgment may be enforced immediately.

I.C. § 6-316(1) (emphasis added).

Our case law is clear that statutes that are "*in pari materia*" should be taken together and construed as one system:

> The rule that statutes *in pari materia* are to be construed together means that each legislative act is to be interpreted with other acts relating to the same matter or subject. Statutes are *in pari materia* when they relate to the same subject. Such statutes are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions.

*Grand Canyon Dories v. Idaho State Tax Comm'n*, 124 Idaho 1, 4, 855 P.2d 462, 465 (1993) (quoting *Meyers v. City of Idaho Falls*, 52 Idaho 81, 89–90, 11 P.2d 626, 629 (1932)).

This is also consistent with the law's long history of making careful distinctions between a tenant and a subtenant:

> There is no privity of contract or estate between the original lessor and the sublessee because the lease does not pass to the subtenant, and there is no contractual relation between the subtenant and the lessor. Whatever rights a subtenant has are derived from the sublease and are subject to the terms of the original lease. The subtenant acquires against the original lessor no greater rights concerning the use and enjoyment of the premises than the original lessee had, and express restrictions contained in the original lease regarding the use that may be made of the premises are binding upon the sublessee. Thus, for example, a subtenant will not have a cause of action against a landlord to enforce a sublease provision that purportedly granted the subtenant the right to purchase the property, where the prime lease afforded the tenant no such right and there was no privity of contract between the subtenant and the landlord.
>
> Because of the lack of privity, the sublessee does not acquire, merely as a result of the sublease, any right to enforce the covenants or agreements of the lessor contained in the original lease. *Sublessees may not maintain actions against the landlord on the original lease, but must seek redress against the sublessor.*

49 Am. Jur. 2d Landlord and Tenant § 969 (2023) (emphasis added) (citations omitted).

While the Sankeys express concerns about eviscerating protections for tenants and shielding irresponsible corporations, they miss the point. St. Vincent de Paul had a statutory right in September 2018 when they emailed Ivey about the dead tree to demand that Hometown Property remedy the problem. If Hometown Property refused to do anything after being given notice, St.

19

Vincent de Paul had the right to bring suit for damages and specific performance. *See* I.C. § 6-320(d).

And, while it is not likely to be a source of consolation for the Sankeys, there was another cause of action they could have pursued in the courts but did not. The Manufactured Home Residency Act authorizes a "resident" of a manufactured home community to file an action against a landlord for damages and specific performance for "[m]aintaining the premises in a manner hazardous to the health or safety of the resident[.]" *See* I.C. § 55-2014(1)(b).

In short, we decline to read the word "tenant" in Idaho Code section 6-320(a)(3) as including all subtenants. This interpretation does not eviscerate protections for tenants; instead, it clarifies that a tenant has the statutory right to bring suit for damages and specific performance after giving a landlord notice. Thus, we affirm the district court's decision affirming the magistrate court's grant of summary judgment on the landlord-tenant claim under Idaho Code section 6-320(a)(3).

### E. We award reasonable attorney fees and costs to Perry and Ivey.

The Sankeys request costs under Idaho Rule of Civil Procedure 54(d)(1)(B) and reasonable attorney fees on appeal under Idaho Code section 6-324. The Sankeys are not the prevailing party, so we do not award them fees or costs.

The Owners and Managers likewise request reasonable attorney fees under Idaho Code section 12-120(1) and section 6-324 and costs under Idaho Rule of Civil Procedure 54(d)(1), (e)(1). Section 12-120(1) mandates an award of attorney fees to the prevailing party in any action where the amount pleaded is $35,000 or less:

> Except as provided in subsections (3) and (4) of this section, in any action where the amount pleaded is thirty-five thousand dollars ($35,000) or less, there shall be taxed and allowed to the prevailing party, as part of the costs of the action, a reasonable amount to be fixed by the court as attorney's fees. For the plaintiff to be awarded attorney's fees, for the prosecution of the action, written demand for the payment of such claim must have been made on the defendant not less than ten (10) days before the commencement of the action; provided, that no attorney's fees shall be allowed to the plaintiff if the court finds that the defendant tendered to the plaintiff, prior to the commencement of the action, an amount at least equal to ninety-five percent (95%) of the amount awarded to the plaintiff.

Idaho Code § 12-120(1).

Here, the Sankeys pleaded damages in the amount of "$5,000 +" and filed a small claims action, thus limiting their recovery to no more than $5,000. Under the plain language of section

12-120(1), this Court *shall* award attorney fees to the prevailing party. Inasmuch as the Owners and Managers are the prevailing parties, they are entitled to recover reasonable attorney fees incurred on appeal. Likewise, they are entitled to recover costs; their recovery is not under Rule 54 of the Idaho Rules of Civil Procedure, but under Idaho Appellate Rule 40.

## V.    CONCLUSION

We affirm the decisions of the district court. We award reasonable attorney fees incurred on appeal to Respondents pursuant to Idaho Code section 12-120(1). We also award Respondents costs on appeal pursuant to Idaho Appellate Rule 40.

Chief Justice BEVAN, and Justices STEGNER, MOELLER and ZAHN, CONCUR.